## 18103

Jimmy DENNIS, Appellant, v. WILLIAMS FURNITURE
CORPORATION, Respondent

(132 S. E. (2d) 1)

*Edward V. Atkinson, Esq.,* of Sumter, *for Appellant,*

*Messrs. George D. Levy* and *C. M. Edmunds,* of Sumter, *for Respondent,*

July 26, 1963.

BUSSEY, Justice.

In this Workmen's Compensation case the hearing Commissioner made an award to the claimant for permanent, partial disability based on the undisputed fact that claimant is suffering from rupture or degeneration of an intervertebral disc. The full Commission, on appeal, adopted, *in toto,* the hearing Commissioner's findings of fact, conclusions and award. The employer appealed to the circuit court on eight exceptions, and the circuit court, without any discussion, in its order, of the somewhat complicated facts, reversed the award of the Commission on the sole ground that the claim was barred by the statute of limitations, Section 72-303, 1962 Code of Laws, thus finding it unnecessary to pass upon the other exceptions. On appeal by the claimant, the employer urges as additional sustaining grounds the exceptions to the award of the Industrial Commission not passed upon by the circuit court.

The claimant was employed at the furniture factory of the employer and in February or March of 1959, and for some time prior thereto, his duties involved "pulling glue clamps." It is undisputed that, on or about March 4, 1959, a handle on a glue clamp broke off, with the result that claimant fell to the floor. The extent and nature of his fall, however, is in sharp dispute. The employer denies that the claimant actually sustained or claimed any injury as a result of that accident. Whether he did or not, within about thirty days thereafter, he was referred to a Dr. Hewitt who performed a hernia operation on him, and he was away from his job until May 11, 1959, his medical expenses and lost time being reimbursed in part under a group health and accident insurance policy, a part of the premium therefor being paid by the employer and a part by the employee.

When claimant returned to work his regular job had been filled by another man and, as claimant was still recuperating from the operation, he was put on lighter work where he remained until some time in the summer of 1960, according to the claimant, the month of July. At that time, which we think from the other evidence in the record was clearly August 11, due to the fact that certain other employees were out and another man was needed on the glue clamps, the claimant was returned to his former duties handling the glue clamps. Just what happened when he returned to this work is in sharp dispute. In any event, no claim for compensation was filed with the Industrial Commission until December 2, 1960, and although it is not clear, it is inferable from the record that the claim then filed was based on the accident which occurred on or about March 4, 1959.

The claimant's contention is that he sustained injuries in the March 1959 accident and that such injuries were aggravated by accidental means in the course of his employment in the summer of 1960. The award of the Commission lacks a great deal in clarity as to the basis of the award. After finding as a fact that the claimant had sustained a compensable injury on or about March 4, 1959,

it was found that "this injury was further aggravated when the employee returned to heavy work in July 1960." There was no specific finding of fact that the claimant sustained any injury or aggravation thereof by any accidental occurrence in July 1960. Without stating any reason therefor, the Commission found as a fact that the claim was filed within the statutory time. While denominating such as a finding of fact, we think that such was only a conclusion of law, rather than a finding of fact, and it is, therefore, reviewable. *Fox v. Union-Buffalo Mills,* 226 S. C. 561, 86 S. E. (2d) 253.

Although much of the testimony deals with what did or did not occur during two unspecified nights in July 1960, it is otherwise clear from the record that the nights referred to were actually Thursday and Friday, August 11 and 12, 1960. The claimant's version is that on Thursday night, August 11, he was requested to return to work on the glue clamps, but remonstrated against doing so, telling his superior repeatedly that "my back hurts me too bad and my stomach to pull them things. I've just got a sore in my stomach, a knot in my stomach and it's sore." He further testified that his back and his stomach had been bothering him ever since the accident of March 4, 1959, but that at the insistence of his superior he returned to the glue clamps on Thursday night which was "light" and that on Friday night, which would have been August 12, while pulling glue clamps, his stomach pulled loose and he felt something pop loose, and then it just got to lingering in his back, hurting him worse and worse. Testimony in behalf of the employer negates the occurrence of anything of an accidental nature at that time, or any complaint of an accident, but admits that the claimant complained that he was unable to work on the glue clamps as a result of which he was told to go see the doctor and ascertain whether or not the doctor would certify him for light work. As a result, claimant attempted to see Dr. Hewitt, on the following Monday, but was not able to see him until Friday, August 19. In the course of the next

several months he was seen by several doctors, and it developed that, in addition to his back condition, he was suffering from hypertension and an ulcerated stomach, to which latter ailment medical evidence attributed his stomach pains. Although claimant came back and tried to work one night during September, he last regularly worked for his employer on August 12.

He drew benefits under the aforementioned group policy until November, when the same terminated, and evidence on behalf of the employer is to the effect that claimant never made any complaint or claim of any accidental injury until after his insurance payments terminated.

The questions raised on appeal are several, but, in our view, it is necessary to decide only one question. Any claim for injuries sustained in the accident of March 4, 1959 is clearly barred by the statute. We find it unnecessary to decide whether the evidence is sufficient to support a finding of fact by the Commission that the claimant sustained an injury, or aggravation thereof, by accident in the course of his employment in July 1960 (actually August 12th), even if the Commission had so specifically found. The key question, and we think the only one necessary to decide, is whether there is any competent evidence to support a finding of fact that the present back disability of the claimant is causally connected with any accident which may have occurred August 12, 1960.

As to causal connection, the claimant relies principally upon the testimony of his witnesses, Dr. Lee Givens, who apparently specializes in internal medicine and cardiology, and Dr. Haynes Barr, whose qualifications as a radiologist were admitted. The percentage of claimant's disability, thirty-five per cent as found by the Commission, is based on the uncontroverted testimony of Dr. Givens. His rating was based on the condition of claimant's back, but he expressed no opinion as to what part, if any, of such disability resulted from any accident. Claimant was first seen by Dr. Givens on July 22, 1961, who testified that it was impossible

to tell from the X-ray studies made by Dr. Barr whether the condition of claimant's spine occurred as a result of trauma or as a result of aging process; that the condition disclosed by the X-rays could be either a ruptured or a degenerated disc. No effort was made by counsel to elicit from Dr. Givens any opinion as to the possibility, let alone the probability, that the condition shown by the X-rays was the result of, or aggravated by, the particular event alleged by the claimant to have occured in August 1960. The testimony of Dr. Givens, with respect to causation, amounts to nothing more than stating a possibility that claimant's condition may have resulted from trauma under unspecified circumstances and at some unspecified time in the past. He did not undertake to establish any correlation between the condition and the alleged accident as to either the time or circumstances thereof.

Dr. Haynes Barr testified that he had made a series of back studies of the claimant on different occasions subsequent to August 12, 1960. He confirmed that X-rays disclosed that the claimant had a rupture or degeneration of an intervertebral disc. When asked if the condition which he found could be caused by "traumatic injury", he testified:

"A. It is possible. I might qualify that and state that the changes here would indicate that this is not an acute injury. The sclerosis, the relative density of the bone at the articulate surfaces of these vertebral bodies and the spur information would indicate that this had been present for some time.

"Q. Would it form in that manner in a year's time?

"A. I think you would perhaps begin to see changes there."

\* \* \*

"Q. Just a couple of questions, Doctor. About how long do you think that situation existed in this particular patient?

"A. This would be purely a guess. These changes I would say could occur within a year's time, I believe I said that a little bit earlier. It would be my opinion that these changes have taken place gradually over this person's life time. It

may have been speeded up perhaps in the last few years and depending on a person's particular age—when we start into this so called degenerative process which we start from the day we are born, as we get older, it is more likely to speed up.

"Q. A man of fifty-five years of age?

"A. Yes, I would say these changes, the sclerotic changes and the lipping had to take over a period of about ten years time.

"Q. Ten years. Then there wouldn't have been much change within the last—would you say the last three years?

"A. It would have been slowly progressing over a period of three years."

We have not quoted all of the medical evidence, but have quoted sufficienctly to show that the medical evidence, offered by the claimant himself, fails to comply with the recognized rule in this state, "that when the testimony of medical experts is relied upon to establish causal connection between an accident and subsequent disability or death, in order to establish such, the opinion of the experts must be at least that the disability or death 'most probably' resulted from the accidental injury." *Cross v. Concrete Materials,* 236 S. C. 440, 114 S. E. (2d) 828. To the contrary, the medical evidence here tends to negate even any possibility, let alone probability, that his present disability is causally connected with any occurrence of August 12, 1960.

Aside from the medical evidence, there is nothing to support a finding of causal connection except the testimony of the claimant himself to the effect that he hurt his back on the night of August 12. However, his testimony was further to the effect that his back had been hurting him since March 1959; that he was unable to do anything but light work, and that his back was hurting him too bad to undertake the work which he attempted to do on August 11 and 12, 1960. This lay testimony on the part of the claimant is quite similar to the lay evidence in the *Cross* case, above cited, where the claimant contended that his pre-existing osteo-arthritis was aggravated by accidental means. His claim in this respect

being unsupported by medical evidence which complied with the rule above quoted, this court held such lay evidence to be insufficient to support a finding of causal connection.

In the recent case of *Grice v. Dickerson,* 241 S. C. 225, 127 S. E. (2d) 722, it was said:

"Where, however, the testimony of medical experts is not solely relied upon to establish causal connection, whether the presence or absence of such medical testimony is conclusive depends upon the particular facts and circumstances of the case," citing a long line of cases.

In that case we held that while the evidence was undoubtedly scant, the many circumstances there involved, not present here, constituted some evidence reasonably tending to support the conclusion of the Industrial Commission as to causal connection. In the *Cross* case, above cited, the court distinguished a case such as this from several of the decisions in which awards of the Industrial Commission, not supported by medical testimony as to causation, were affirmed.

This court, in *Anderson v. Campbell Tile Co.,* 202 S. C. 54, 24 S. E. (2d) 104 (1943), quoted with approval from a text book on evidence, as follows:

"* * * where the subject is one for experts or skilled witnesses alone and concerns a matter of science or specialized art or other matters of which a layman can have no knowledge, the unanimous opinion of medical experts on particular subjects may be conclusive, even if contradicted by lay witnesses * * *."

Larson in his treatise on Workmen's Compensation Law, Section 79-54, asserts that reliance on lay testimony is not justified when the medical question is a complicated one and likely to carry the fact finding body into realms which are more properly within the province of medical experts. It is further stated in this section:

"The increasing tendency to accept awards unsupported by medical testimony should not be allowed to obscure the basic necessity of establishing medical causation by expert

testimony in all but simple and routine cases—and even in these cases such evidence is highly desirable and is a part of any well prepared presentation."

Viewing the entire evidence in the light most favorable to the claimant, as we are required to do, we conclude that the record contains no competent evidence reasonably tending to support a conclusion that the claimant's present back condition was causally connected with, or aggravated by, any accident which may have occurred on August 12, 1960.

Any claim for injury based upon or arising out of the accident of March 4, 1959, being barred by the statute, and there being no competent evidence of any causal connection with respect to any accident not barred by the statute, it follows that the circuit court was correct in setting aside and reversing the award made by the Industrial Commission.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.