513 S.E.2d 843

**Elizabeth H. TILLER, Respondent,**

v.

**NATIONAL HEALTH CARE CENTER OF SUMTER, Petitioner.**

No. 24915.

Supreme Court of South Carolina.

Heard Jan. 21, 1999.

Decided March 8, 1999.

Rehearing Denied April 7, 1999.

John C. Land, III, and J. Calhoun Land, IV, of Land, Parker & Reaves, of Manning, for respondent.

George C. James, Jr., of Richardson & James, of Sumter, for petitioner.

BURNETT, Justice:

In this workers' compensation case, a single commissioner of the South Carolina Workers' Compensation Commission (the Commission) concluded respondent had suffered a compensable back injury and awarded temporary total benefits plus medicals. The full Commission, the circuit court, and the Court of Appeals affirmed finding substantial evidence supported the award. *Tiller v. National Health Care Center of Sumter*, Op. No. 97–UP–343 (S.C.Ct.App. refiled Sept. 11, 1997). This Court granted National Health Care Center of Sumter's (National Health) petition to review the Court of Appeals' opinion. We affirm as modified.

## FACTS

Respondent, a registered nurse, worked at National Health. On December 18, 1994, respondent was dispensing medications to the residents of National Health. As she pushed

the medication cart from a tile floor to a carpeted floor, the wheels unexpectedly jammed causing pain in respondent's lower back and right leg. Respondent finished working her shift; however, the next morning she was unable to get out of bed. Respondent made an appointment to see Dr. Davis.

X-rays of respondent's back and legs were taken on December 20, 1994. These films were essentially normal; however, they did reveal respondent's L5–S1 disc was severely deteriorated and there was a milder narrowing and spur formation at L3–L4. Because the pain persisted, respondent was referred to Dr. Gee, an orthopaedist. By February 8, 1995, X-ray films showed the intervertebral space at L3–L4 was essentially obliterated by what Dr. Gee diagnosed as discitis, a disc space infection caused by E. coli bacteria. Respondent was hospitalized for approximately one month. On March 13, 1995, Dr. Edwards, an orthopaedist, hospitalized respondent again and referred her to HealthSouth Rehabilitation Center for physical therapy and antibiotic treatment.

The single commissioner found in favor of respondent and awarded her temporary total weekly benefits. The commissioner found the jamming of the medicine cart wheels aggravated respondent's pre-existing condition of a degenerated disc at L5–S1. Further, the commissioner found the discitis at L3–L4, caused by either a stab wound or a urinary tract infection, was aggravated by the injury of December 18, 1994.

National Health appealed arguing respondent failed to prove her case by the preponderance of the evidence. The full Commission, the circuit court, and the Court of Appeals affirmed the single commissioner's decision.

## ISSUE

Did the Court of Appeals fail to apply the correct standard of proof regarding the sufficiency of medical evidence in this medically complex workers' compensation case?

## DISCUSSION

National Health argues in this medically complex case [1] respondent failed to provide expert medical testimony about

---

1. Respondent does not deny this case is medically complex.

causation as required by *Smith v. Michelin Tire Corp.*, 320 S.C. 296, 465 S.E.2d 96 (Ct.App.1995), and thus did not carry her burden of proof. Specifically, National Health argues respondent failed to establish with expert medical testimony, stated at least to a reasonable degree of medical certainty, that the discitis was present prior to her accident on December 18, 1994.[2] We disagree.

This Court must affirm the findings of fact made by the Commission if they are supported by substantial evidence. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981). Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached. *Grayson v. Carter Rhoad Furniture*, 317 S.C. 306, 454 S.E.2d 320 (1995). Where there is a conflict in the evidence, either by different witnesses or in the testimony of the same witness, the findings of fact of the Commission are conclusive. *Glover v. Columbia Hospital of Richland County*, 236 S.C. 410, 114 S.E.2d 565 (1960). Indeed, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Moore v. City of Easley*, 322 S.C. 455,

---

2. Both parties agree the accident did not actually cause the discitis. Instead, respondent claims the accident aggravated or accelerated the discitis. *See Arnold v. Benjamin Booth Co.*, 257 S.C. 337, 185 S.E.2d 830 (1971) (where a previously existing condition or disease is aggravated by injury or accident arising out of or in the course of employment and this results in disability, there is a compensable injury); *Mullinax v. Winn–Dixie Stores, Inc.*, 318 S.C. 431, 458 S.E.2d 76 (Ct.App.1995).

The parties agree there are two possible sources of the E. coli infection which caused respondent's discitis. One source could be a urinary tract infection (UTI) which was diagnosed in February 1995 or the infection could have originated from an incident in August 1994 when a nursing home resident stabbed respondent with his fork. E. coli is normally found in the digestive tract, and the resident's fork could have been contaminated with digestive juices. National Health argues the source of the infection determines whether the discitis existed at the time of the accident. According to National Health, the discitis could only be present prior to the accident if the fork stabbing incident was the source of the infection. We disagree. The single commissioner found either the fork stabbing incident or a UTI caused the discitis which was present on December 18, 1994. Thus, regardless of the source of the infection, if the infection was present in the disc space on December 18, 1994, the subsequent disability is compensable.

472 S.E.2d 626 (1996). An appellate court may not substitute its judgment for that of an agency as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative, and substantial evidence on the record. *Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 466 S.E.2d 357 (1996). Workers' compensation awards must not be based on surmise, conjecture or speculation. *Kennedy v. Williamsburg County*, 242 S.C. 477, 131 S.E.2d 512 (1963).

In *Smith*, the Court of Appeals held "if the claimant is attempting to establish causation of a medically complex condition, however, expert testimony is required." [3] *Id.* at 298, 465 S.E.2d at 97. Relying on Dr. Gee's February 1995 notes and Dr. Edwards' June 1995 letter, the Court of Appeals found respondent carried her burden of presenting expert medical testimony as to causation and affirmed the circuit court's order. *Tiller, supra.* Further, the Court of Appeals concluded the doctors' testimony, combined with other evidence, provided substantial evidence to support the award. *Id.*

The rule stated in *Smith* has some merit. In fact, this Court suggested a similar rule in dicta. *See Lorick v. S.C. Elec. & Gas Co.*, 245 S.C. 513, 141 S.E.2d 662 (1965) (stating medical causation should be established with expert testimony in all but simple cases); *Dennis v. Williams Furniture Corp.*, 243 S.C. 53, 132 S.E.2d 1 (1963).

However, our case law does not support application of this rule in workers' compensation cases. *See Lorick, supra* (the Court found neither the expert testimony nor the lay testimony provided evidentiary support of a causal connection); *Dennis, supra* (viewing the evidence in the light most favorable to claimant, there was no competent evidence to support an award). Instead, the Commission is given discretion to weigh and consider all the evidence, both lay and

**3.** While the claimant in *Smith* did file a petition for writ of certiorari with the Court, the claimant did not challenge the Court of Appeals' statement that expert testimony was required to establish causation. The only question raised in the petition was whether the Court of Appeals erred in holding no expert testimony causally related petitioner's worsened psychological condition to her neck injury. This Court denied the petition for a writ of certiorari on July 24, 1996.

expert, when deciding whether causation has been established. *See Ballenger v. Southern Worsted Corp.*, 209 S.C. 463, 40 S.E.2d 681 (1946) (despite doctor's testimony that there was not a connection with the accident that caused almost boiling dye to fly in claimant's face and eyes and his subsequent eye problems, lay testimony of claimant's good vision before the accident was sufficient to support an award); *Poston v. Southeastern Construction Co.*, 208 S.C. 35, 36 S.E.2d 858 (1946) (lay testimony that claimant's eyes became runny and inflamed after some construction material blew into them and that claimant lost vision in eyes subsequent to the accident was sufficient to support an award, even though doctor testified vision loss was not related to job injuries). Thus, while medical testimony is entitled to great respect, the fact finder may disregard it if there is other competent evidence in the record. *Ballenger, supra.* Indeed, "medical testimony should not be held conclusive irrespective of other evidence." *Ballenger*, 209 S.C. at 467, 40 S.E.2d at 682–83.

 Expert medical testimony is designed to aid the Commission in coming to the correct conclusion; therefore, the Commission determines the weight and credit to be given to the expert testimony. *Poston, supra; Hines v. Pacific Mills*, 214 S.C. 125, 51 S.E.2d 383 (1949). Once admitted, expert testimony is to be considered just like any other testimony. *Smith v. Southern Builders*, 202 S.C. 88, 24 S.E.2d 109 (1943).

 If a medical expert is unwilling to state with certainty a connection between an accident and an injury, the "expression of a cautious opinion" may support an award if there are facts outside the medical testimony that also support an award. *Grice v. Dickerson, Inc.*, 241 S.C. 225, 127 S.E.2d 722 (1962) (where medical testimony definitely recognized the possibility of a causal connection between the accident and the rheumatoid arthritis but no medical testimony stated a connection to a reasonable degree of medical certainty, the Commission had to weigh the facts in light of the medical possibilities and draw inferences consistent with the medical testimony in the record); *Brewer v. Charleston Shipbuilding & Drydock Co.*, 212 S.C. 43, 46 S.E.2d 173 (1948) (doctor's testimony indicating a connection between claimant's accident and his

subsequent fungal infection, though not stated to a reasonable degree of medical certainty, was sufficient to support an award when combined with lay testimony about claimant's health before and after the accident, despite the testimony of another doctor that stated there was no connection). Thus, if medical expert testimony is not solely relied upon to establish causation, the fact finder must look to the facts and circumstances of the case. *Grice, supra.* Proof that a claimant sustained an injury may be established by circumstantial and direct evidence where circumstances lead an unprejudiced mind to reasonably infer the injury was caused by the accident. *Grice, supra; Hewitt v. Cheraw Cotton Mills,* 217 S.C. 90, 59 S.E.2d 712 (1950). However, such evidence need not reach such a degree of certainty as to exclude every reasonable or possible conclusion other than that reached by the Commission. *Grice, supra.*

■ Unlike the Court of Appeals, we decline to apply the standard set out in *Smith.* Instead, in deciding whether substantial evidence supports a finding of causation, we consider both the lay and expert evidence.

Dr. Edwards testified by deposition that although he could state with a reasonable degree of medical certainty that respondent had discitis at L3–L4 by February 10, 1995, he could not state with a reasonable degree of medical certainty that respondent had discitis at L3–L4 on December 18, 1994, the date of the accident. Dr. Edwards noted the majority of E. coli infections in the body stem from urinary tract infections. When tests revealed respondent had a UTI in February 1995, Dr. Edwards presumed the UTI was the cause of the discitis. However, Dr. Edwards agreed it was possible the E. coli could have gone from the fork stab wound to the disc and then to the urinary tract.[4] Dr. Edwards stated it was his opinion that most probably "something else" was going on in respondent's spine at the time of the accident. Noting respondent had no history of UTIs until February 1995, he said that

---

4. After the resident stabbed respondent, she was given a tetanus shot. The tetanus shot caused an inflammation and she was prescribed Keflex, an antibiotic. About a month later, respondent complained of a sore throat, and she was again prescribed Keflex. Dr. Edwards testified Keflex would tend to combat the spread and growth of E. coli bacteria.

given the chronology of events, it made sense that there was some relationship between the stab wound and discitis. However, Dr. Edwards was unable to "state with a reasonable degree of medical certainty about that [relationship]." Dr. Edwards testified "I think basically by the time the diagnosis was made in February, I think that [the discitis] had been there for some indeterminate period of time and [there is] no way to know how long it had been there, or really, no way to know what exactly caused it."

In a letter addressed to respondent's attorney, Dr. Edwards stated if discitis was present at L3–L4 on December 18, 1994, then in his opinion, based on a reasonable degree of medical certainty, the accident aggravated the condition in her back. In addition, assuming there was no evidence of a UTI, Dr. Edwards stated to a reasonable degree of medical certainty the stab wound caused the discitis.

In February 1995, Dr. Gee stated "hematogenous spread from stab wound caused the disc space infection. Studies may confirm or contradict." In a letter dated May 30, 1995, contradicting his earlier conclusion, Dr. Gee stated he believed it was more likely the UTI rather than the fork-stabbing incident was the cause of the discitis. Dr. Gee indicated he would defer to Dr. Ervin, a specialist in infectious diseases, on this issue.

Dr. Ervin stated he could not relate the fork-stabbing incident with the infection that caused the discitis. Further, Dr. Ervin states "[s]ince she was already complaining of considerable malaise during October and November, the injury in the nursing home back [sic] with her back in December was *either coincidental or reflective of the first symptom of an evolving disc space infection as time and destruction progressed.*" (emphasis added). Dr. Ervin noted respondent did not have a history of UTIs and had no UTI symptoms.

Respondent testified she had not been feeling well during the Fall of 1994. Dr. Perry confirmed respondent's malaise during this time period. Within hours after the accident, respondent's back was causing her great pain. While the pain diminished after she began wearing the back brace prescribed by Dr. Gee, it did not disappear. Further, within two months of the accident, the pain became unbearable even with the aid

 343

of the brace. An X-ray taken on December 20, 1994, showed an essentially normal L3–L4 region. However, an X-ray taken less than two months later showed the disc space surrounding this region was almost completely destroyed.

In our opinion, the medical evidence and the lay testimony, considered together, is sufficient to establish the discitis was present prior to December 18, 1994. Thus, because substantial evidence supports the award, we affirm.[5]

**AFFIRMED AS MODIFIED.**

FINNEY, C.J., TOAL, MOORE, and WALLER, JJ., concur.

---

5. Because we affirm the award, there is no need to address National Health's remaining issue.