THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Robert David Johnson, Employee, Respondent,
 v.
 Santee Cooper, Employer, and South Carolina Public Service Authority, Carrier, Appellants.
 
 
 

Appeal From Berkeley County
Thomas L. Hughston, Circuit Court Judge

Unpublished Opinion No. 2006-UP-0081
Heard February 7, 2006  Filed February 10, 2006

AFFIRMED

 
 
 
 Kirsten L. Barr, of Mt. Pleasant, for Appellants.
 Stephen B. Samuels, of Sumter, for Respondent.
 
 
 

PER CURIAM:  In this Workers Compensation case, the employer, Santee Cooper, and its insurance carrier, South Carolina Public Service Authority (collectively referred to as Santee Cooper) appeal the circuit courts affirmance of the appellate panels rulings that Robert David Johnson (1) sustained a compensable back injury caused by the repetitive trauma of his job at Santee Cooper; (2) gave timely notice to Santee Cooper of his back injury; and (3) was entitled to temporary disability benefits.  We affirm.
Facts
In 1991, Johnson began working as an Equipment Operator I with Santee Cooper.  He was eventually promoted to Equipment Operator III.  That job required operating heavy equipment used to clear the right of way for power lines.  Johnson had a part-time seasonal job with Rickenbaker Cotton Gin and was a volunteer firefighter.  At Rickenbaker, Johnson ran the office, did paperwork on the bale weights, and occasionally drove a truck.
In March of 2000, Johnson underwent back surgery.  The surgery was not claimed under Workers Compensation.  Johnson returned to work with no restrictions in May of 2000.
Around late September or early October of 2001, Johnson was transferred to the Versatile crew.  A Versatile is similar to a log skidder with big tires and a big cutting deck.  Johnsons job required operating the Versatile on rough swampy areas.  A month or two after Johnson started on the Versatile, about November 2001, he informed David Duke, his crew leader, he was having extreme back pain and asked Duke to take him off the Versatile.  He told Duke he thought running the Versatile was causing his back pain because of the way it rocks and bounces all the time.  According to Johnson, Duke refused to take him off the Versatile, telling Johnson he had no one else to run it.
Johnsons back problems worsened.  On December 7, 2001, he returned to Dr. Kenneth S. Kammer, the surgeon who performed his first back surgery.  At that time, Johnson was having extreme back pain.  Dr. Kammer advised Johnson he would need another operation and gave him a letter to take to Santee Cooper advising he would be out for surgery.  A day or two later, Johnson gave the letter to Duke.  He also gave the letter to Benjamin Baggette, a [s]upervisor right of way clearing, who sent it to medical.
Johnson had his surgery on January 3, 2002.  After his surgery, Johnson retained a lawyer.  His attorney mailed a letter to the Workers Compensation Commission and Santee Cooper filing Johnsons claim on February 27, 2002.
On March 4, 2002, Johnson had a meeting at Santee Cooper with Baggette, Duke, and Joe Hutchinson.  Hutchinson is a senior safety specialist with Santee Cooper.  At the meeting, Hutchinson asked Johnson about making a Workers Compensation claim.  Johnson told the men he hurt his back operating the Versatile and that was the reason for his claim.  Johnson stated he had told Duke the previous fall about the Versatile bothering his back and asked Duke to take him off the Versatile.
Santee Cooper filed a 12-A listing the date of injury as December 7, 2001, with notice being given at the safety meeting on March 1, 2002.  Santee Cooper denied the claim based on lack of notice.
Dr. Kammer kept Johnson out of work or on light duty until at least January 2003.  Johnson was restricted to no lifting greater than thirty pounds.  His job description required lifting up to fifty pounds.  Johnson was unable to return to work as an equipment operator because of his work restrictions.  Santee Cooper had no work within his restrictions.  Johnson returned to light duty work at Rickenbaker Cotton Gin on August 8, 2002.
The single commissioner determined the claim was compensable and found: [D]ue to the repetitive trauma attendant to his operation of the Versatile, [Johnson] suffered compensable injuries by accident to his lower back and left leg (radiculopathy). This injury was an aggravation of a pre-existing condition.  The commissioner awarded causally related medical treatment and temporary disability compensation from January 3, 2002 through December 18, 2002.  The single commissioner made no conclusions of law.  The appellate panel affirmed with modifications.  The appellate panel added Conclusions of Law.  The panel amended the award of temporary partial disability during the period when Johnson had not reached maximum medical improvement, but had returned to light duty work at his second job.  The circuit court affirmed the order of the appellate panel in its entirety.
Standard of Review
The substantial evidence rule of the Administrative Procedures Act governs the standard of review in a Workers Compensation decision.  Frame v. Resort Servs., Inc., 357 S.C. 520, 593 S.E.2d 491 (Ct. App. 2004).  An appellate court must affirm the findings of fact made by the appellate panel if they are supported by substantial evidence and not controlled by legal error.  Tiller v. National Health Care Ctr., 334 S.C. 333, 513 S.E.2d 843 (1999); S.C. Code Ann. § 1-23-380(A)(6) (2005).  Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action.  Pratt v. Morris Roofing, Inc., 357 S.C. 619, 594 S.E.2d 272 (2004).  The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence.  Anderson v. Baptist Med. Ctr., 343 S.C. 487, 541 S.E.2d 526 (2001).  It is not within our province to reverse findings of the appellate panel which are supported by substantial evidence.  Broughton v. South of the Border, 336 S.C. 488, 520 S.E.2d 634 (Ct. App. 1999).
Discussion
I.  Repetitive Trauma Injury
Santee Cooper argues the circuit court erred in affirming the appellate panels finding that due to the repetitive trauma of operating the Versatile, Johnson suffered a compensable injury to his back.  Santee Cooper claims [t]here is absolutely no evidence in the record that [Johnson] suffered any back injury while working for Santee Cooper.  We disagree.
Generally, a repetitive trauma injury is compensable under the Workers Compensation Act.  See Pee v. AVM, Inc., 352 S.C. 167, 573 S.E.2d 785 (2002).  Further, back injuries caused by repetitive trauma are compensable when supported by substantial evidence.  See White v. Medical University of South Carolina, 355 S.C. 560, 586 S.E.2d 157 (Ct. App. 2003).  Repetitive trauma injuries have a gradual onset caused by the cumulative effect of repetitive traumatic events or mini-accidents.  Schurlknight v. City of North Charleston, 352 S.C. 175, 574 S.E.2d 194 (2002).  It is well established that causation can be proven by both expert and lay testimony.  Tiller v. National Health Care Ctr., 334 S.C. 333, 513 S.E.2d 843 (1999).  Indeed, lay testimony of the employee unsupported by any medical evidence can be sufficient to support the finding of a causal connection.  Id.; Arnold v. Benjamin Booth Co., 257 S.C. 337, 185 S.E.2d 830 (1971).
There is substantial evidence to support the appellate panels finding that, [d]ue to the repetitive trauma of operating the Versatile, [Johnson] aggravated his pre-existing back condition.
Following Johnsons first back surgery in March 2000, he was cleared to work full duty with no restrictions by Dr. Kammer.  Johnson had no complaints throughout the remainder of 2000 and most of 2001.  About one or two months after Johnson began working on the Versatile in the fall of 2001, Johnson started having extreme, more harder back pain . . .  in the low of [his] back and experienced some numbness in his left leg.  The pain c[a]me on gradually.  Johnson told Duke he was having back pains and wanted to get off of [the Versatile].  Johnson specifically informed Duke his back pain was caused by [r]unning the Versatile, because [of] the way it rocks and bounces on me all the time . . . [o]n the rough terrain on the right-of-ways its more bouncier, its not more comfortable than the tractors.  Duke confirmed the Versatile was a bumpy ride.
Johnson saw Dr. Kammer regarding his back problems on December 7, 2001.  After an examination, Dr. Kammer immediately recommended back surgery.  The exacerbation of the back pain by Johnsons job is documented in Dr. Kammers report of December 7, 2001:

 He is a heavy equipment operator for Santee Cooper and works heavy equipment mostly in a sitting position. . . . He understood that the primary purpose of surgery [in 2000] was to get rid of the sciatic pain but that it would not necessarily prevent future back pain especially in a heavy industrial job. . . . His pain is primarily exacerbated by long periods of sitting . . . He has not missed any work but he has a lot of discomfort at work.

Dr. Kammer signed off on a Santee Cooper Industrial Work Availability Form (IWA) on July 17, 2002.  The IWA contained a question asking whether the injury was work-related.  The form was marked yes.  The form had a space after the word yes for a brief description, in which was written Back pain.  On July 22, 2002, an internal Santee Cooper e-mail was sent from Lynne Jamison to Baggette noting receipt of IWA from Dr. Kammer and stating [t]he IWA also indicated that his back pain was work related.  Santee Cooper pointed out that two earlier IWAs indicated the problem was not work-related.  However, Duke admitted he may have checked that the problem was not work-related on these two earlier forms. 
Substantial evidence supports the appellate panels finding that Johnson sustained a compensable injury to his back as a result of the repetitive trauma of operating the Versatile in his job at Santee Cooper.
II.  Statutory Notice
Santee Cooper maintains the appellate panels finding that Johnson satisfied the statutory notice requirement is not supported by substantial evidence.  We disagree.
Section 42-15-20 of the South Carolina Workers Compensation Act requires that every injured employee or his representative give the employer notice of a job-related accident within ninety days after its occurrence.  S.C. Code Ann. § 42-15-20 (1985).  In applying section 42-15-20 to a repetitive trauma injury, the appellate panel shall determine the statutory notice requirement from the time of disablement of the claimant.  Bass v. Isochem, 365 S.C. 454, 617 S.E.2d 369 (Ct. App. 2005).  Notice begins to run when the employee becomes disabled and could discover with reasonable diligence his condition is compensable.  Id.  The burden is upon the claimant to show compliance with the notice provisions of section 42-15-20.  Id.
Johnson testified that, a month or two after Johnson started on the Versatile, he informed Duke he was experiencing back pain and asked Duke to take him off the Versatile.  Johnson declared that Duke denied his request.  On March 4, 2002, Johnson attended a meeting at Santee Cooper with Baggette, Duke, and Hutchinson.  At the meeting, Hutchinson asked Johnson about his injury, how it happened, and about making a Workers Compensation claim.  When Hutchinson asked Johnson whether he told anyone at Santee Cooper about hurting his back, Johnson responded: I spoke with David Duke about it . . . [and] asked him to take me off the machine.  According to Johnson, Duke verified that [Johnson] asked him to take [Johnson] off of [the Versatile] in the fall before the surgery.  In addition, Baggette stated that, at the meeting, Johnson advised Baggette that in the fall of 2001 he told Duke about the Versatile bothering his back.  Baggette further professed that Duke verified . . . that that fall before [Johnson] had the surgery he had told Duke about the Versatile bothering his back.  Although Duke did not deny he and Johnson had a conversation in October 2001 about the Versatile hurting Johnsons back, Duke stated he did not recall Johnson reporting this information to him.
On cross-examination, the following colloquy occurred between defense counsel and Johnson:

 Q:  When you took [Duke Dr. Kammers December 7, 2001] letter, did you tell him then that your problems were work related or that your surgery was caused by your employment at Santee Cooper? 
 A.  Not right then at that point in time.  It was a couple weeks later that I talked to him about that. . . . It was before surgery right after I gave him that letter.
           . . . . 
 Q.  What specifically did you tell [Duke]?
 A.  That I wantthis ones going to be covered under Workmens Comp. and he was going to look into it.

Substantial evidence supports the appellate panels finding that Johnson gave timely notice to Santee Cooper of his injury.
III.  Temporary Disability Benefits
Santee Cooper argues the appellate panel erred in awarding Johnson temporary disability benefits because there is no evidence to support a finding that [Johnson] was incapable of earning his pre-accident wages after April 29, 2002.  We disagree.
The appellate panel awarded Johnson temporary disability benefits from January 3, 2002 through December 18, 2002.  It is undisputed that Johnson was under work restrictions during the period from January 3, 2002 through December 18, 2002.  On July 17, 2002, Dr. Kammer filled out Santee Coopers own IWA form.  Dr. Kammer wrote: This employee has been unable to work since January 02 [and] will be able to return to full-duty work on possibly January 03.  Dr. Kammer further noted: Light duty only.  May not lift or carry more than thirty pounds (30 lbs.).  Will reassess patient in December02.  On the same form, Duke noted a fifty pound lifting requirement and indicated no light duty work was available.
Johnson was on light duty and Santee Cooper offered no employment within Johnsons restrictions.  Santee Cooper contends, notwithstanding its failure to offer suitable employment, that [h]aving failed to make any effort to secure employment, [Johnson] cannot satisfy his burden of proof that he is entitled to any temporary disability compensation.  This assertion is meritless.
The Workers Compensation Act provides that the employer must either offer suitable employment within the injured workers capacity, or pay temporary total disability compensation.  See S.C. Code Ann. § 42-9-190 (1985); Last v. MSI Constr. Co., 305 S.C. 349, 409 S.E.2d 334 (1991).  An employer is required to pay temporary compensation [w]hen the incapacity for work resulting from an injury is total.  S.C. Code Ann. § 42-9-10 (Supp. 2005).  The term disability is defined as incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.  S.C. Code Ann. § 42-1-120 (1985).  Disability is presumed to continue until the employee returns to work.  25A S.C. Code Ann. Regs. 67-502(B)(2) (Supp. 2005); 25A S.C. Code Ann. Regs. 67-506(A) (Supp. 2005).  Temporary total disability benefits are available up until the date of maximum medical improvement.  See Hendricks v. Pickens County, 335 S.C. 405, 517 S.E.2d 698 (Ct. App. 1999).
Per Dr. Kammer, Johnson was disabled from his job at Santee Cooper until December 18, 2002, when Dr. Kammer released him at maximum medical improvement.  Santee Cooper offered no suitable employment within Johnsons capacity.  Because he was still disabled due to his injury, Johnson was entitled to temporary compensation until he reached maximum medical improvement.
The appellate panel correctly awarded temporary total disability when Johnson was completely out of work and then temporary partial disability when Johnson returned to his part-time job at Rickenbaker Cotton Gin.
Conclusion
Accordingly, we
AFFIRM.
HEARN, C.J., ANDERSON, and KITTREDGE, JJ., concur.