682 S.E.2d 512

Susette HIERONYMUS, Employee, Respondent,

v.

Clarence Thomas HAMRICK III, DMD, Employer, Clarendon National Ins. Co., Carrier, and Hartford Ins. Co. of the Midwest, Carrier, Defendants,

Of Whom Clarence Thomas Hamrick, III, DMD and Clarendon National Ins. Co. are Appellants,

and

Hartford Ins. Co. of the Midwest, Carrier is Respondent.

No. 4596.

Court of Appeals of South Carolina.

Heard May 12, 2009.
Decided July 22, 2009.

2

Andrew Kaplan, of Charlotte, for Appellants.

Jason Alexander Griggs and Kathryn Williams, of Green-ville, for Respondent.

HUFF, J.

In this workers' compensation case, Clarendon National Insurance Company argues the circuit court erred in affirming the Commission's findings that: 1) Susette Hieronymus sus-

tained an injury by accident to her neck; 2) Clarendon is liable for the alleged neck injury; 3) Hieronymus's claim against Clarendon was timely; and 4) the ganglion cyst in Hieronymus's right hand was caused by or related to the right hand injury and subsequent surgery. We affirm.

## FACTS/PROCEDURAL HISTORY

Hieronymus has worked as a dental hygienist for Dr. Clarence T. Hamrick (Employer) since 1993. As a dental hygienist, she is required to constantly position her neck and upper extremities in an awkward manner while using vibrating tools. In September of 2002, Hieronymus consulted Dr. Roslyn Harris regarding pain in her upper extremities, including her right wrist. Dr. Harris suspected carpal tunnel syndrome and referred Hieronymus to Dr. Craig S. Woodward for a nerve conduction study. Following the study, Hieronymus was diagnosed with carpal tunnel syndrome on the right side. In October of 2002, Hieronymus reported her condition to Employer, who filed a Form 12–A worker's compensation claim with Clarendon, its insurance company at the time. The Form 12–A stated Hieronymus suffered a work-related injury to her right arm and wrist due to "constant repetitive motions performed by dental hygienist and assisting duties."

Subsequently, Hieronymus was referred to Dr. Edwin Rudisill for treatment of her condition. After conservative therapy failed to alleviate Hieronymus's carpal tunnel syndrome, Dr. Rudisill performed surgery on her wrist. Following surgery, Hieronymus continued to complain of some soreness and numbness in her hand. However, in August of 2003, Dr. Rudisill released her to work without restrictions after concluding she had reached maximum medical improvement with a five percent impairment rating. In October of 2003, Dr. John P. Evans evaluated Hieronymus for her continuing pain and concluded the pain was a result of the surgery and should only last for six months to a year.

In May of 2004, Hieronymus returned to Dr. Rudisill due to the continuing pain in her hand. An x-ray of the hand revealed a small abnormality which "could represent" a ganglion cyst. However, Dr. Rudisill opined the cyst was not related to the activity in her hands or the cause of her pain.

Further, Dr. Rudisill's report indicates he informed Hieronymus he did not know of any other treatment other than anti-inflammatory medicine to alleviate the pain, and he released her without work restrictions.

In November of 2004, Hieronymus filed a Form 50 request for additional treatment for injuries to her "right hand, right upper extremity, right elbow, right shoulder, and neck" alleging she suffered the injuries on October 1, 2002. On November 29, 2004, Hieronymus went to Dr. Gordon Early for an independent medical examination of the pain in her hand, wrist, and neck. Although Dr. Early found her neck pain was not attributable to her work, he opined the ganglion cyst in Hieronymus's wrist might have been a complication of the carpal tunnel release surgery.

Subsequently, Hieronymus filed additional Form 50's to request a hearing on the matter. Clarendon responded, admitting Hieronymus suffered a carpal tunnel injury on October 1, 2002, but denying she suffered any other compensable injuries or needed additional medical treatment. Prior to a hearing before the single commissioner of the Workers' Compensation Commission, both Hieronymus and Clarendon agreed to an evaluation by Dr. James Essman regarding the ganglion cyst. He opined the cyst was not related to the carpal tunnel release surgery. Dr. Essman also noted Hieronymus's neck pain "was caused and/or aggravated by the awkward posture in which she works in her employment as a dental hygienist."

Also prior to a hearing, the single commissioner granted Clarendon's motion to join as a defendant Hartford Insurance Company, which provided coverage to Employer after Clarendon's coverage ended in April of 2003.

Following the hearing, the single commissioner found Hieronymus sustained injuries to her neck, hands, and upper extremities on October 1, 2002 as a result of repetitive trauma. Further, the single commissioner found the ganglion cyst in Hieronymus's hand was compensable because it "was caused or aggravated by the compensable injuries to her right hand and the subsequent treatment, including surgery." Accordingly, the single commissioner concluded Clarendon was responsible for all causally related treatment as the insurer at

the time of her injury by accident. The Appellate Panel of the Workers' Compensation Commission (the Appellate Panel) found the single commissioner's conclusions were correct and adopted the single commissioner's order in its entirety. The circuit court affirmed the Appellate Panel's order, concluding the findings were supported by substantial evidence. This appeal followed.

## STANDARD OF REVIEW

The Administrative Procedures Act establishes our standard of review of decisions by the South Carolina Workers' Compensation Commission. Accordingly, this court can reverse or modify the Appellate Panel's decision only if the appellant's substantial rights have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. S.C.Code Ann. § 1–23–380(5) (Supp.2008); *Shealy v. Aiken County,* 341 S.C. 448, 454, 535 S.E.2d 438, 442 (2000). "Substantial evidence is not a mere scintilla of evidence nor evidence viewed from one side, but such evidence, when the whole record is considered, as would allow reasonable minds to reach the conclusion the [Appellate Panel] reached." *Shealy,* 341 S.C. at 455, 535 S.E.2d at 442. The possibility of drawing two inconsistent conclusions does not prevent the Appellate Panel's conclusions from being supported by substantial evidence. *Tiller v. Nat'l Health Care Ctr.,* 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999). The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel. *Shealy,* 341 S.C. at 455, 535 S.E.2d at 442.

## LAW/ANALYSIS

A.  Neck injury

■ Employer and Clarendon argue the circuit court erred in affirming the Appellate Panel's finding Hieronymus sustained an injury by accident to her neck on October 1, 2002. We disagree.

The Appellate Panel held: "Claimant sustained injuries to her neck, both hands, and both upper extremities on or around

October 1, 2002 as a result of repetitive trauma in her job with employer-defendant." Clarendon asserts there is not substantial evidence to support this finding that Hieronymus was experiencing neck pain at this time. Hieronymus's medical records from Dr. Woodward and Dr. Rudisill indicated Hieronymus only reported pain in her arms, wrists, elbows, and shoulders.

However, when asked about the development of her problems in October of 2002, Hieronymus testified that the problems began with numbness in her hands that "started in my right, but then, you know, it went to my left and it was both of them, the right was significantly worse.... And my elbows and neck, constant...." She stated that the surgery helped the numbness, but she still had pain in her hands, elbows, and neck. She explained she only complained about the pain in her right hand in her intake form to Dr. Rudisill because the pain in that hand was horrid. The Appellate Panel held Hieronymus's testimony was very credible.

Hieronymus's testimony provides evidence that she was suffering pain in her neck as well as in her arms and shoulders as of October of 2002. As the determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel, we find substantial evidence in the record supports the Appellate Panel's determination that Hieronymus had suffered an injury to her neck on October 1, 2002. *See Shealy,* 341 S.C. at 455, 535 S.E.2d at 442.

Clarendon also argues the Appellate Panel erred in concluding it is liable for coverage of the neck injury, even if there is substantial evidence supporting the finding Hieronymus experienced pain in her neck in October 2002. Clarendon contends that because Hieronymus's neck injury is a repetitive trauma injury developing over time, October of 2002 is not the appropriate date for determining which insurer is liable for coverage.

Clarendon admitted Hieronymus suffered an injury by accident in October of 2002 due to "constant repetitive motions performed by dental hygienist and assisting duties." In addition, as stated above, we have found substantial evidence supports the Appellate Panel's conclusion that Hieronymus suffered an injury by accident to her neck on October 1, 2002.

"[W]hen a claim is filed, all elements of compensation are included. It was not contemplated by the Act that different parts of the total result of one accident should be regarded as separate claims." *Hamilton v. Bob Bennett Ford,* 336 S.C. 72, 88, 518 S.E.2d 599, 607 (Ct.App.1999), *aff'd as modified,* 339 S.C. 68, 528 S.E.2d 667 (2000). It is not necessary that the claim state all of the injurious effects arising out of the accident. *Id.*

We hold substantial evidence in the record supports the Appellate Panel's finding that Hieronymus sustained injuries to her neck, as well as to her hands and upper extremities, in October of 2002, and, as Clarendon was the carrier for Employer at that time, it is responsible for Hieronymus's claim. Accordingly, the circuit court properly affirmed the Appellate Panel on this issue.

B. Statute of limitations

Clarendon argues Hieronymus's claim of a neck injury was untimely because she did not file a claim for the injury until November of 2004, over two years after the date of the alleged injury by accident, and outside the statute of limitations set forth in Section 42–15–40 of the South Carolina Code (Supp.2008). However, as stated above, once a claimant files a claim, that claim encompasses all of the effects of that accident. *Bob Bennett Ford,* 336 at 88, 518 S.E.2d at 607. Accordingly, we find Hieronymus satisfied the statute of limitations when Clarendon accepted her original claim.

C. Ganglion cyst

Clarendon argues the circuit court erred in affirming the Appellate Panel's finding that the ganglion cyst in Hieronymus's hand was caused by her carpal tunnel syndrome or aggravated by subsequent treatment. It asserts Dr. Early's opinion the cyst "may be" related to the surgery was speculative and did not amount to substantial evidence.

"If a medical expert is unwilling to state with certainty a connection between an accident and an injury, the 'expression of a cautious opinion' may support an award if there are facts outside the medical testimony that also support an award." *Tiller v. Nat'l Health Care Ctr.,* 334 S.C. 333, 340,

513 S.E.2d 843, 846 (1999). "Proof that a claimant sustained an injury may be established by circumstantial and direct evidence where circumstances lead an unprejudiced mind to reasonably infer the injury was caused by the accident." *Id.* at 341, 513 S.E.2d at 846–47.

In his report of his independent medical exam, Dr. Early opined, "I think this ganglion cyst may be a post-surgical complication." He explained how the injury could occur during surgery. Dr. Early recommended Hieronymus undergo an imaging procedure of her wrist to determine if she did in fact have a ganglion cyst. He stated, "If it is a ganglionic cyst, we would consider it to be attributable to the previous carpel tunnel surgery, and I would recommend surgical excision." The issue of whether the cyst was a ganglion cyst does not appear to be in dispute. Accordingly, the Appellate Panel's conclusion that the cyst was caused by her surgery is supported by substantial evidence.

## CONCLUSION

For the above stated reasons, the order of the circuit court affirming the decision of the Appellate Panel is

**AFFIRMED.**

PIEPER and GEATHERS, JJ. concur.