739 S.E.2d 892

**Charlotte WILLIAMS, Employee, Appellant,**

v.

**David Stafford DRYWALL, Self–Insured Employer, and Accident Insurance Company, Respondents.**

Appellate Case No. 2011–182266.

No. 5088.

Court of Appeals of South Carolina.

Heard Dec. 11, 2012.

Decided Feb. 20, 2013.

Rehearing Denied April 18, 2013.

---

174

Kevin B. Smith, of The Steinberg Law Firm, LLP, of Charleston, for Appellant.

Kirsten Leslie Barr and Jamie C. Guerrero, both of Trask & Howell, LLC, of Mount Pleasant, for Respondents.

SHORT, J.

Charlotte Williams appeals from the order of the Appellate Panel of the South Carolina Workers' Compensation Commission (Appellate Panel) finding her totally and permanently disabled and awarding her lifetime medical treatment for the injuries to her back, left leg, and pelvis. She argues the Appellate Panel erred in: (1) basing her average weekly wage on Workers' Compensation Commission (Commission) Form 20; (2) failing to find her neurogenic bladder related to her back injury; and (3) denying her claim for partial paraplegia. We affirm.

**FACTS**

On October 13, 2008, Williams was working as a drywall finisher for David Stafford Drywall[1] when she fell 12 to 14 feet. As a result of the accident, on December 22, 2008, Williams filed a Form 50, claiming she injured her left ankle bone, pelvis, right foot, left foot, right hip, and left hip. On June 8, 2009, she filed an amended Form 50, asserting injuries to her left hip, left leg, pelvis, right leg, back, brain, head, and left foot. Williams filed her second amended Form 50 on January 6, 2010, more than one year after the accident, claiming she injured her left hip, left leg, pelvis, right leg, back, brain, head, left foot, and for the first time, her bowels and bladder. Respondents admitted the accident, but only as to Williams' injuries to her left leg, spine, and pelvis. Respondents denied Williams was permanently and totally disabled.

---

1. David Stafford Drywall and Accident Insurance Company are the Respondents (collectively, Respondents).

Williams challenged her average weekly wage and compensation rates, claiming her compensation rate should be $253.35.

The Single Commissioner held a hearing on the matter on March 22, 2010. The Commissioner issued his order on May 10, 2010, finding Williams sustained injuries only to her back, pelvis, and her left leg. He found she was permanently and totally disabled as a result of the combination of her injuries, pursuant to section 42–9–10 of the South Carolina Code, and was entitled to five-hundred weeks of compensation, less weeks paid. He determined Williams' average weekly wage was $198.08, with a compensation rate of $132.05, and provided her award be paid in lump sum.[2] The Commissioner ordered Respondents to pay for all past, present, and future causally-related medical treatment, excluding any treatment Williams sought from unauthorized providers. He further ordered Respondents to pay for all lifetime repair, replacement, removal, and maintenance of any causally-related retained hardware.

Williams filed a request for Commission review on May 18, 2010, which was denied by the Commissioner on August 16, 2010.[3] On August 3, 2010, Williams filed a motion to submit additional and newly discovered evidence. Williams then appealed to the Appellate Panel, and a hearing was held on September 21, 2010. The Appellate Panel issued its order affirming the Commissioner's order in its entirety on December 17, 2010. This appeal followed.

**STANDARD OF REVIEW**

The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions by the Appellate Panel. *Carolinas Recycling Grp. v. S.C. Second Injury Fund,* 398 S.C. 480, 483, 730 S.E.2d 324, 326 (Ct.App.2012). Under the scope of review established in the APA, this court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact, but may reverse or modify the Appellate Panel's decision if the appellant's substantial rights have been preju-

---

2. Williams accepted payment of this award on June 29, 2010.

3. Williams did not appeal the Commissioner's denial of her claims for the right leg, left hip, brain, head, or bowel.

diced because the decision is affected by an error of law or is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *See* S.C.Code Ann. § 1–23–380(5)(e) (Supp.2012). Our supreme court has defined substantial evidence as evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion the Appellate Panel reached. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Palmetto Alliance, Inc. v. S.C. Pub. Serv. Comm'n,* 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984). "Where there are no disputed facts, the question of whether an accident is compensable is a question of law." *Grant v. Grant Textiles,* 372 S.C. 196, 201, 641 S.E.2d 869, 872 (2007).

## LAW/ANALYSIS

### I. Form 20

Williams argues the Appellate Panel erred in basing her average weekly wage on Commission Form 20. We disagree.

Section 42–1–40 of the South Carolina Code provides four alternative methods for the commission to use to calculate the average wage. S.C.Code Ann. § 42–1–40 (Supp.2012); *see Pilgrim v. Eaton,* 391 S.C. 38, 44, 703 S.E.2d 241, 244 (Ct.App. 2010). The primary method of calculation requires that the " '[a]verage weekly wage' must be calculated by taking the total wages paid for the last four quarters ... divided by fifty-two or by the actual number of weeks for which wages were paid, whichever is less." S.C.Code Ann. § 42–1–40 (Supp. 2012). However, "[w]hen for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." *Id.* "The statute provides an elasticity or flexibility with a view toward always achieving the ultimate objective of reflecting fairly a claimant's probable future earning loss." *Sellers v. Pinedale Residential Ctr.,* 350 S.C. 183, 191, 564 S.E.2d 694, 698 (Ct.App.2002). " 'The objective of wage calcu-

lation is to arrive at a fair approximation of the claimant's probable future earning capacity.'" *Id.* (quoting *Bennett v. Gary Smith Builders,* 271 S.C. 94, 98, 245 S.E.2d 129, 131 (1978)).

Williams argues the Appellate Panel erred in basing her average weekly wage on the Form 20 because it does not include all her wages and violates section 42–1–40 of the South Carolina Code. Williams bases this assertion on Stafford's testimony during the March 22, 2010 hearing. When questioned, Stafford testified Williams earned $76 per day when she was working for him. He said some wage records may have been left out of the computation because he could not find them. He further answered "yes" to the following question: "And I think you indicated in your deposition, I asked you is it fair to say she made more money working for you than she is getting right now?"

Williams also argues the Form 20 was not completed correctly because it divides her total wages by fifty-two weeks, and she did not work all fifty-two weeks in the year preceding her injury. Williams claims she earned $76 per day, or $380 per week, resulting in a compensation rate of $253.35. Williams did not introduce any wage records or pay stubs to support the higher compensation rate.

The Form 20 filed by Respondents claimed Williams' average weekly wage was $198.08, with a weekly compensation rate of $132.05. Stafford testified the Form 20 included all the wages he could find at the time. He stated they worked some weeks and some weeks they did not. He added that for the last year-and-a-half to two years "work was just awful."

The Single Commissioner found the average weekly wage and compensation rate should remain as stated in the Form 20 because he saw no reason to deviate from the Form 20, and Williams did not present any additional evidence to support an increase in her wages. He also noted Stafford testified he "used all of her wages he located and that work had been very slow prior to her accident." Further, the Commissioner stated Williams "agreed that if David Stafford prepared a wage statement on her behalf she would accept it as being accurate," and she "conceded that the number of hours she worked was affected by the availability of work." Additionally, she

agreed she has received temporary disability compensation since the date of the injury at the current compensation rate and had not challenged it as being inaccurate until now. Therefore, we find substantial evidence in the record supports the Appellate Panel's decision not to deviate from the primary method of calculation as provided in section 42–1–40.

## II. Bladder Problem

Williams argues the Appellate Panel erred in failing to find her neurogenic bladder related to her back injury. We disagree.

This court must affirm the Appellate Panel's findings of fact if they are supported by substantial evidence. *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999). "Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached." *Id.* "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* This court may not substitute its judgment for that of the agency's as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative, and substantial evidence on the record. *Id.* at 339, 513 S.E.2d at 845.

When determining if a claimant has established causation, the Appellate Panel has discretion to weigh and consider all the evidence, both lay and expert. *Potter v. Spartanburg Sch. Dist. 7*, 395 S.C. 17, 23, 716 S.E.2d 123, 126 (Ct.App.2011). "Thus, while medical testimony is entitled to great respect, the fact finder may disregard it if other competent evidence is presented." *Id.* The Appellate Panel has the final determination of witness credibility and the weight to be accorded the evidence. *Id.* "If a medical expert is unwilling to state with certainty a connection between an accident and an injury, the 'expression of a cautious opinion' may support an award if there are facts outside the medical testimony that also support an award." *Tiller*, 334 S.C. at 340, 513 S.E.2d at 846. "Proof that a claimant sustained an injury may be

established by circumstantial and direct evidence where circumstances lead an unprejudiced mind to reasonably infer the injury was caused by the accident." *Id.* at 341, 513 S.E.2d at 846–47. The extent of impairment need not be shown with mathematical precision; however, an award "may not rest on surmise, conjecture, or speculation; it must be founded on evidence of sufficient substance to afford it a reasonable basis." *Linen v. Ruscon Constr. Co.*, 286 S.C. 67, 68, 332 S.E.2d 211, 212 (1985).

Williams argues the Appellate Panel erred in failing to find her neurogenic bladder was related to her injury. Williams asserts she repeatedly mentioned to Dr. Robert Alexander, of the Spine and Orthopaedic Specialists of South Carolina, P.A., that her bladder was leaking and she was urinating on herself. She further asserts he told her that was "not a type of problem he could handle" and did not write her complaints in her medical records. Williams independently saw Dr. Steven Poletti, of the Southeastern Spine Institute, on July 15, 2009, and his notes suggest Williams was suffering from "some measure of bowel and bladder dysfunction." Williams then independently saw Dr. Eric Rovner, a urologist at MUSC, on February 2, 2010, and as a result, he concluded she has "urge urinary incontinence and stress urinary incontinence" as a result of her work related accident. Dr. Poletti's notes from a February 3, 2010 visit state Williams saw Dr. Rovner and was diagnosed with voiding dysfunction. Williams also independently saw Dr. Timothy Zgleszewski, of Palmetto Spine Sports Medicine, P.A., on January 20, 2010, and his notes mention a diagnosis of neurogenic voiding dysfunction. Additionally, on March 3, 2010, Williams independently saw Dr. Jeffrey Faaberg, of the Edisto Spine Center, Inc., and his notes state Williams has frequent urinary incontinence.

However, the Single Commissioner stated Dr. Christopher Merrell's medical notes from her visits on December 18, 2008, March 3, 2009, and July 23, 2009, all noted Williams had no bowel or bladder incontinence. Dr. Alexander's notes from her visits on August 3, 2009, and October 12, 2009, state she denied any bowel or bladder changes. Therefore, the Commissioner found Williams repeatedly told the authorized providers she did not have urinary incontinence. He further found that "although Dr. Poletti diagnosed her with urinary

problems during the first [independent medical exam], [Williams] testified that she never reported any urinary problems to him. Moreover, she testified that Dr. Poletti only met with her for 10 minutes during the first [independent medical exam]." Additionally, the Commissioner found that contrary to Dr. Rovner's report, the medical records from Dr. Langdon Hartsock and Dr. Merrell, both also from MUSC, "specifically note that [Williams] was *not* suffering from urological problems following her accident." The Commissioner noted that during the hearing, Williams testified she was open and honest with Dr. Hartsock and Dr. Merrell about all of her symptoms and problems and was happy with their treatment. Furthermore, she acknowledged she did not raise any complaints about Dr. Alexander's treatment during her discovery deposition. The Commissioner also noted in his order Respondents did not learn about Williams' alleged urinary incontinence allegation until Williams' Form 50 was filed on January 6, 2010.

Although the record references her urinary problems, the only medical evidence relating to Williams' urinary problems are the doctors she saw independently, and Williams testified she never reported any urinary problems to Dr. Poletti. Therefore, we find the substantial evidence in the record supports the Appellate Panel's finding Williams was not entitled to a claim for urinary incontinence.

### III. Partial Paraplegia

Williams argues the Appellate Panel erred in denying her claim for partial paraplegia. We disagree.

During a February 3, 2010 visit, Dr. Poletti determined Williams was qualified for a diagnosis of incomplete paraplegia. Williams also independently saw Dr. Faaberg on March 3, 2010, and his notes state Williams "requires gait assistance with a walker" and determined she qualifies for the criteria specified for incomplete paraplegia.

However, the Commissioner's order states Williams testified that contrary to Dr. Faaberg's report, she never told him she relied on a walker or a cane and that she has not used a walker since the beginning of her claim. Additionally, Dr. Zgleszewski's notes from her January 20, 2010 visit state

Williams told him "she does *not* use a cane, walker, or crutches." (Emphasis added.) He did not diagnose her with incomplete paraplegia. Further, Williams conceded that none of her authorized doctors, Dr. Hartsock, Dr. Merrell, or Dr. Alexander, had ever diagnosed her as suffering from incomplete paraplegia. Video surveillance was admitted into evidence that shows Williams going shopping, driving a car, and walking without assistive devices. Williams admitted she does not use the cane when she goes out because it is hard on her back, and she conceded she sometimes walks at a normal pace. The Commissioner's order also noted Respondents did not receive notice of the incomplete paraplegia claim until they received Williams' pre-hearing brief. Therefore, we find substantial evidence in the record supports the Appellate Panel's finding Williams was not entitled to a claim for partial paraplegia.

## CONCLUSION

Accordingly, the Appellate Panel's order is

**AFFIRMED.**

KONDUROS and LOCKEMY, JJ., concur.