681 S.E.2d 595

**Wanda FISHBURNE, Appellant,**

v.

**ATI SYSTEMS INTERNATIONAL, Employer, and Continental Casualty Company, Carrier, Respondents.**

No. 4559.

Court of Appeals of South Carolina.

Heard April 21, 2009.

Decided June 11, 2009.

Kathryn Williams, of Greenville, for Appellant.

Weston Adams, III, and Ashley B. Stratton, of Columbia, for Respondents.

SHORT, J.

Wanda Fishburne appeals the circuit court's order affirming the Appellate Panel of the Workers' Compensation Commission, arguing the court erred in finding (1) she sustained only ten percent loss of use of her back; (2) she was not entitled to an award of permanent partial disability to her right lower extremity; (3) she was only entitled to additional medical treatment needed to wean her from unnecessary narcotics; and (4) she did not provide credible testimony at the hearing. We affirm.

## FACTS

In January 1999, Fishburne began working for ATI Systems International (ATI), an armored transport company.

Fishburne worked as a money room manager, which involved unloading money from the transport trucks, counting the money, and entering the amounts on balance sheets. On January 22, 2002, Fishburne injured her back while attempting to unload a bag of coins from a cart. The next day, she went to Doctor's Care for treatment and was given permission to return to work with a five-pound weight limitation. As a result of her weight limitation, ATI terminated her employment in March because they did not have any jobs that met her restrictions.

Dr. H. Stanley Reid, a neurosurgeon at the Carolina Orthopaedic Center, saw Fishburne in April 2002,[1] and noted she had no abnormal spine alignment, but ordered a magnetic resonance image (MRI), which showed mild degenerative disc disease. Dr. Reid recommended Fishburne attend physical therapy and have an epidural steroid injection. In July, Dr. Reid discharged Fishburne as having reached maximum medical improvement (MMI) and rated her at medium work capacity. He restricted her work to avoid frequent bending or lifting, but stated she could lift up to thirty-five pounds occasionally, up to twenty pounds frequently, and carry twenty pounds one-hundred feet. He also gave her an impairment rating of five percent for the whole person. During a visit in December, Dr. Reid noted Fishburne's subjective complaints far outweighed his objective findings, and the radiographic report showed her lumbar spine had normal disc height and normal alignment. He told her exercise and trunk strengthening would have significant benefits; however, Dr. Reid stated this suggestion was discounted by Fishburne and her husband. In January 2003, Dr. Reid noted Fishburne exhibited four out of five Waddell's non-organic physical signs [2] and

---

1. From the record on appeal, it appears Fishburne was treated at Doctor's Care from the day after her accident until she began seeing Dr. Reid.

2. Waddell's non-organic physical signs are a group of physical signs that may indicate a non-organic or psychological component to chronic low back pain. Gordon Waddell, MD, et al., *Nonorganic Physical Signs in Low–Back Pain*, Spine, March/April 1980, at 117. If more than three out of the five signs are present, there is high probability the patient has non-organic pain. *Id.* Doctors have used these signs to detect "malingering" patients with back pain. *See* Gordon Waddell, MD, et al.,

had non-organic pain behaviors which affected her gait. He also restated her subjective complaints of pain far outweighed his objective findings, and he did not see any necessity in continuing narcotic medication given his findings. Again, he discharged her at MMI and gave her an impairment rating of five percent for the whole person and entire spine.

In July of 2002, Fishburne underwent a functional capacity evaluation, which found she was able to frequently sit, stand, walk, grasp, stack, static trunk bend, kneel, crouch, stoop, repetitively squat, and push and pull a weighted cart; occasionally lift a maximum of thirty-six-and-a-half pounds from floor to knuckle level; lift thirty-one-and-a-half pounds from knuckle to shoulder; frequently lift twenty-four-and-a-half pounds from floor to knuckle level and from knuckle to shoulder level; and frequently carry twenty-four-and-a-half pounds for one-hundred feet. Based on the findings, the evaluator determined Fishburne was lifting in the medium category of work based on the United States Department of Labor (USDL) Standards and met the physical demands to perform medium work for an eight-hour day based on the USDL Standards; however, she did not meet the physical demands required to lift a maximum of fifty pounds as required by her job at ATI. The evaluator also noted Fishburne exhibited some Waddell signs, indicating she had moderate magnified illness behavior, and although she did not take pain medicine before the test, no spikes in Fishburne's heart rate were noted with the increased reports of pain.

Dr. Philip C. Latourette, a pain management specialist at the Carolina Center for Advanced Management of Pain, saw Fishburne in June of 2003. He noted her electromyogram

*Behavioral Responses to Examination: A Reappraisal of the Interpretation of "Nonorganic Signs"*, Spine, Nov. 1, 1998, at 2367; *Torres v. Astrue*, 2009 WL 873995, at *2 n. 1 (D.S.C. March 30, 2009) ("Waddell's criterion consists of a standardized group of five types of physician signs used by examiners to detect malingering or pretending."). Malingering is a medical term that refers to the act of intentionally feigning or exaggerating physical or psychological symptoms for personal gain. Robert Scott Dinsmoor, *Malingering*, Gale Encyclopedia of Medicine (2002), *available at* http://www.healthline.com/galecontent/malingering?utm_term=malinger & utm_medium=mw & utm_cam paign=article; *see* Taber's Cyclopedic Medical Dictionary 1160 (17th ed.1993).

(EMG), MRI, computerized tomography (CT) myelogram, and nerve conduction velocity tests were all negative. He also noted that Fishburne did not find physical therapy, epidural shots, and discography to be helpful. Dr. Latourette ordered a sacroiliac joint injection and right side facet joint injection; however, they also did not provide Fishburne with relief. A selective nerve root injection gave her some short-term relief. Dr. Latourette referred Fishburne to Dr. C. David Tollison for further treatment. Dr. Tollison, a psychologist at the Carolina Center for Advanced Management of Pain, first saw Fishburne in February of 2004. She complained of lower back and right leg pain from her work injury. He diagnosed her with an adjustment disorder with mixed depressive and anxiety features and somatoform pain disorder with psychological factors.[3] At his deposition, Dr. Tollison stated he had just seen Fishburne the day before, and she told him the "pain was not all the way down her leg and in her foot like it was when she was first injured." Fishburne also told Dr. Tollison she was exercising, spending time with her family, fishing, maintaining a positive attitude overall, and learning to do other things. Dr. Tollison prescribed Wellbutrin and Zoloft for Fishburne's depression and said he believed she would need treatment five or six times a year because of her medications and continued therapy. He also stated he believed she had reached a level of psychological MMI. However, in October of 2005, Dr. Tollison signed a statement that Fishburne was permanently and totally disabled as a result of the combination of her physical and psychological problems related to her work injury.

In February of 2004, Fishburne saw Dr. William B. Evins, an orthopedic surgeon at Oakwood Orthopaedic, for an independent medical evaluation. Dr. Evins found no indication of any disc disease that would cause all of her symptoms and she was at MMI with an impairment rating of fifteen to twenty percent of the lumbar spine. In January of 2006, Fishburne was given two independent medical evaluations and one vocational evaluation. Dr. George R. Bruce, an orthopedic sur-

---

3. Somatoform pain disorder is a psychological disorder in which there are symptoms of a disease, but there is no evidence of a physical disorder to explain the symptoms. Taber's Cyclopedic Medical Dictionary 1827 (17th ed.1993).

geon at Oconee Orthopaedic Clinic, found in his independent medical examination that Fishburne had a physical impairment of twenty-four percent for the whole person and twenty-seven percent of the lumbar spine. He also noted she would not benefit from any surgery and had reached MMI. Dr. Charles B. Thomas, of Palmetto Disability Evaluations, found in his independent medical examination that Fishburne demonstrated four of Waddell's five signs, suggesting a non-organic source for her pain, and noted she grimaced and sighed with all movement. Dr. Thomas also noted the degenerative changes shown on Fishburne's MRI predated her work injury, and he believed she could return to her previous level of work if she were off narcotics. In his vocational evaluation of Fishburne, Randy L. Adams, M.Ed., determined she was permanently and totally disabled from any work.

At the hearing before the Single Commissioner, Fishburne was the sole witness to testify on her behalf. Fishburne testified she suffered from pain in her low back, right side, right heel, right leg, and right foot. As a result, she claimed it was hard for her to get out of bed in the morning, and she came to the hearing using her mother's cane that no doctor had prescribed for her. Fishburne testified she was not able to sit or stand for long periods of time, wash a sink of dishes, or remove wet clothes from the washer. Fishburne also asserted she cried for no reason because she could no longer do things she used to be able to do, and the pain medicine eased her pain, but the pain never went away completely. In July of 2004, Fishburne was involved in a car accident, but maintained she only injured her neck. Fishburne testified she sought a lump sum payment for total disability to buy a house, and she had not worked since she was let go from ATI, but she had not applied for any jobs since that time.

The Single Commissioner found Fishburne sustained a ten percent permanent partial disability to her back including any right lower extremity radiculopathy. The Commissioner determined the greater weight of the evidence did not support a finding that Fishburne was permanently and totally disabled under South Carolina Code sections 42–9–10 or 42–9–30(19). In February of 2007, the Commission's Appellate Panel affirmed the Single Commissioner, and in July of 2007, the

circuit court affirmed the Appellate Panel. This appeal followed.

## STANDARD OF REVIEW

■ The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions by the Appellate Panel. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Under the scope of review established in the APA, this court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Stone v. Traylor Bros., Inc.*, 360 S.C. 271, 274, 600 S.E.2d 551, 552 (Ct.App. 2004).

■ The substantial evidence rule governs the standard of review in a workers' compensation decision. *Frame v. Resort Servs. Inc.*, 357 S.C. 520, 527, 593 S.E.2d 491, 494 (Ct.App.2004). The Appellate Panel's decision must be affirmed if supported by substantial evidence in the record. *Shuler v. Gregory Elec.*, 366 S.C. 435, 440, 622 S.E.2d 569, 571 (Ct.App.2005). However, an appellate court can reverse or modify the Appellate Panel's decision if the appellant's substantial rights have been prejudiced because the decision is affected by an error of law or is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." S.C.Code Ann. § 1–23–380(A)(6) (2005); *Bursey v. S.C. Dep't of Health & Envtl. Control*, 360 S.C. 135, 141, 600 S.E.2d 80, 84 (Ct.App.2004).

"Substantial evidence" is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action.

*Lark*, 276 S.C. at 135, 276 S.E.2d at 306 (citation omitted).

■■ "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Palmetto Alliance, Inc. v. S.C. Pub. Serv. Comm'n*, 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984). In workers'

compensation cases, the Appellate Panel is the ultimate finder of fact. *Shealy v. Aiken County*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). When the evidence is conflicting over a factual issue, the findings of the Appellate Panel are conclusive. *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 290, 599 S.E.2d 604, 611 (Ct.App.2004). The final determination of witness credibility and the weight to be accorded evidence is reserved for the Appellate Panel. *Bass v. Kenco Group*, 366 S.C. 450, 458, 622 S.E.2d 577, 581 (Ct.App.2005).[4]

## LAW/ANALYSIS

### I. Permanent Total Disability

Fishburne argues the Appellate Panel erred in finding she sustained only a ten percent loss of use of her back because she asserts she was permanently and totally disabled from the combination of her injuries. We disagree.

The extent of an injured workman's disability is a question of fact for determination by the Appellate Panel and will not be reversed if it is supported by competent evidence. *Colvin v. E.I. du Pont De Nemours Co.*, 227 S.C. 465, 468, 88 S.E.2d 581, 582 (1955). "While an impairment rating may not rest on'surmise, speculation or conjecture ... it is not necessary that the percentage of disability or loss of use be shown with mathematical exactness.'" *Sanders v. MeadWestvaco Corp.*, 371 S.C. 284, 291, 638 S.E.2d 66, 70 (Ct.App.2006) (quoting *Roper v. Kimbrell's of Greenville*, 231 S.C. 453, 461, 99 S.E.2d 52, 57 (1957)). "The Appellate Panel is not bound by the opinion of medical experts and 'may find a degree of disability different from that suggested by expert testimony.'" *Id.* at 292, 638 S.E.2d at 70 (quoting *Lyles v. Quantum Chem. Co.*, 315 S.C. 440, 445, 434 S.E.2d 292, 295 (Ct.App.1993)). "Expert medical testimony is designed to aid the Commission

---

4. The South Carolina General Assembly recently overhauled South Carolina's Workers' Compensation laws. These statutory changes affect claims for injuries occurring on or after July 1, 2007. *See* 2007 S.C. Acts 111, Part IV, Section 2 ("Except as otherwise provided for in this act, this act takes effect July 1, 2007, or, if ratified after July 1, 2007, and except [as] otherwise stated, upon approval by the Governor and *applies to injuries that occur on or after this date.*") (emphasis added.) The injuries in this case began on January 22, 2002.

in coming to the correct conclusion; therefore, the Commission determines the weight and credit to be given to the expert testimony." *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 340, 513 S.E.2d 843, 846 (1999). The Commission is also given discretion to weigh and consider all the evidence, including both lay and expert testimony. *Id.* at 341, 513 S.E.2d at 847.

Fishburne asserts substantial evidence exists to prove she was entitled to permanent total disability because she sustained complete loss of earning capacity from the injuries to her back and the related effect in her right leg and psyche. The substantial evidence, however, supports the Appellate Panel's decision. Dr. Reid, Fishburne's treating physician, determined she could return to medium work capacity in July of 2002. Also, in July, a functional capacity evaluation determined Fishburne met the physical demands to perform medium work for an eight-hour day based on the United States Department of Labor Standards. In January of 2006, Dr. Thomas stated he thought Fishburne could return to her previous level of work if she were off narcotics. In contrast, Dr. Tollison signed a statement that Fishburne was permanently and totally disabled as a result of the combination of her physical and psychological problems related to her work injury. The Single Commissioner, however, stated she gave less weight to Dr. Tollison's opinion "because of the objective evidence and [her] own observations and impression at the hearing." Also, the vocational evaluator, Adams, determined Fishburne was permanently and totally disabled from any work, but he cited only the opinions of Dr. Bruce and Dr. Tollison in reaching his conclusion, causing the Single Commissioner to give his opinion little weight. Furthermore, Fishburne testified she had not even applied for any jobs since her injury; thus, she did not make any reasonable efforts to secure employment and was unable to do so because of her work-related injury.

The objective medical evidence also does not support Fishburne's claim that she suffers from a serious medical condition that entitles her to permanent total disability. Fishburne underwent many tests and none revealed any serious problems: her EMG and nerve conduction velocity tests were negative; her CT myelogram and neurological exam were

benign; her discography was non-diagnostic; and her MRIs showed only mild disc degenerative disease. None of Fishburne's physicians recommended she have any surgery. Furthermore, at least three different health care providers noted Fishburne exhibited either symptom magnification or Waddell signs, indicating there was a non-organic or psychological component to Fishburne's back pain. Dr. Tollison also diagnosed Fishburne with somatoform pain disorder, a condition where physical symptoms are caused by psychological factors, rather than an identifiable physical cause. The Single Commissioner also determined Fishburne's psychological condition was not disabling because Dr. Tollison's reports stated her mood was stable and the drugs were controlling her depression. The reports also stated her crying spells and irritability had ceased; she was walking for exercise; visiting with grandchildren; attending birthday parties; and seeing friends socially.

■■■ Fishburne also argues the Appellate Panel erred in finding she sustained only a ten percent loss of use of her back. However, this finding was within the evidence presented to the Single Commissioner. Dr. Reid gave Fishburne an impairment rating of five percent for the whole person and entire spine; Dr. Evins gave Fishburne an impairment rating of fifteen to twenty percent of the lumbar spine; and Dr. Bruce gave Fishburne a physical impairment of twenty-four percent for the whole person and twenty-seven percent of the lumbar spine. Therefore, the Appellate Panel's decision awarding Fishburne a permanent partial disability benefit of ten percent loss for her back, including her right lower extremity, was within the medical evidence and testimony presented to the Commission.

## II. Right Leg

Fishburne argues the Appellate Panel erred in finding she was not entitled to an award of permanent partial disability to her right leg. We disagree.

■■■ Fishburne claims her back injury negatively affected her right leg and she was limited in her ability to sit or stand for an extended period of time; thus, she asserts she is entitled to a separate award for the loss of the use of her right

leg. The Single Commissioner's order specifically stated the ten percent permanent partial disability award for Fishburne's back injury encompassed any right lower extremity radiculo-pathy. Also, Fishburne presented no evidence that she had sustained a specific injury to her right lower extremity, and Dr. Evins noted he did not see indication of any disc disease that would cause all of her symptoms. Furthermore, at his deposition, Dr. Tollison stated he had just seen Fishburne the day before and she told him the pain was not all the way down her leg and in her foot like it had been. Thus, the Appellate Panel's decision, finding Fishburne was not entitled to a separate award for permanent partial disability benefits for her right lower extremity, was supported by the evidence presented to the Commission.

## III. Medical Treatment

Fishburne argues the Appellate Panel erred in finding she was only entitled to additional medical treatment to wean her from unnecessary narcotics. We disagree.

Dr. Reid noted in his records that Fishburne exhibited four out of the five Waddell's non-organic physical signs and had non-organic pain behaviors that affected her gait; her subjective complaints of pain far outweighed the objective findings; and he did not see any necessity for Fishburne to continue taking narcotic medication. Dr. Thomas wrote that Fishburne could return to her previous level of work if she were off narcotics. Dr. Thomas also noted Fishburne grimaced and sighed with all movement; determined she demonstrated four out of the five Waddell's signs; and the degenerative changes noted on her MRI predated her work injury. Additionally, Dr. Evins noted he did not see indication of any disc disease that would cause all of Fishburne's symptoms. Dr. Tollison and Dr. Bruce stated they believed Fishburne needed to be maintained on medication; however, the Single Commissioner declared she gave little weight to the opinions of Drs. Tollison and Bruce. Consequently, the Appellate Panel's order finding Fishburne was only entitled to medical treatment for the purpose of weaning her from unnecessary narcotic medication is supported by sufficient evidence.

## IV. Witness Credibility

Fishburne argues the Appellate Panel erred in finding she did not provide credible testimony at the hearing. We disagree.

■ "[T]he Commission is the sole fact-finder in workers' compensation cases, and . . . any questions of credibility must be resolved by the Commission." *Smith v. S.C. Dep't of Mental Health*, 329 S.C. 485, 501, 494 S.E.2d 630, 638 (Ct.App. 1997). "It is logical for the [Appellate Panel], which did not have the benefit of observing the witnesses, to give weight to the Hearing Commissioner's opinion." *Green v. Raybestos–Manhattan, Inc.*, 250 S.C. 58, 64, 156 S.E.2d 318, 321 (1967).

■ Fishburne was the only witness to testify on her behalf. The reliability of the documents and Fishburne's statements were matters of credibility for the Appellate Panel, which, in upholding the Single Commissioner's order, discounted Fishburne's credibility because she exaggerated her symptoms and made inconsistent statements at the hearing and to her treating physicians. Additionally, the Single Commissioner's order stated Fishburne "ambulated into the hearing room with a cane that no doctor prescribed. . . . [P]resented herself as continually wiping tears [the] Commissioner never observed, and constantly made loud sniffling sounds from a nose that . . . never 'ran'." This conduct, in addition to her inconsistent statements, caused the Single Commissioner to question Fishburne's credibility. Therefore, substantial evidence supports the Appellate Panel's decision that Fishburne's testimony was not credible.

## CONCLUSION

Accordingly, the circuit court's order is **AFFIRMED.**

THOMAS and GEATHERS, JJ., concur.