731 S.E.2d 303

**Beau D. CRANFORD, Employee, Appellant,**

v.

**HUTCHINSON CONSTRUCTION, Employer, and Companion Property & Casualty Group, Carrier, Respondents.**

Appellate Case No. 2010–157846.

No. 4939.

Court of Appeals of South Carolina.

Decided Feb. 8, 2012.

Heard March 13, 2012.

Withdrawn, Substituted and Refiled June 13, 2012.

Rehearing Denied June 13, 2012.

68

Stephen Benjamin Samuels, of Samuels Law Firm, LLC, of Columbia, for Appellant Beau Cranford.

Michael W. Burkett, of Willson Jones Carter & Baxley, P.A., of Columbia, for Respondents Hutchinson Construction and Companion Property and Casualty Group.

WILLIAMS, J.

In this workers' compensation appeal, Beau Cranford (Cranford) challenges the Appellate Panel of the Workers' Compensation Commission's (Appellate Panel) findings that he was not entitled to temporary disability compensation, permanent partial disability compensation, and additional medical treatment for injuries he incurred while working for his employer, Hutchinson Construction (Hutchinson). Additionally, Cranford contends the Appellate Panel erred in failing to make specific findings regarding whether he had reached maximum medical improvement (MMI) and in implicitly finding he had reached MMI. We affirm in part, reverse in part, and remand in part.

**FACTS**

Cranford's claim for benefits and medical treatment stems from an injury he sustained while working for Hutchinson. Hutchinson hired Cranford on June 26, 2007, as a day laborer, to assist in assembling a steel building at one of Hutchinson's project sites. On July 20, 2007, Cranford was working in a forklift basket approximately ten feet above ground. Cranford testified the basket was lowered to the ground, and his

co-worker climbed out of the basket. When Cranford was raised back in the air, the basket began to tilt forcing Cranford to jump out of the basket. Cranford sustained injuries to both hands, both arms, and his back as a result of the fall.

Cranford was taken immediately to Conway Medical Center for treatment. Dr. Michael Ellis treated the lacerations on Cranford's arms and noted Cranford complained of mid-lumbar pain when he would sit upright. Dr. Ellis discharged Cranford with instructions to refrain from "heavy lifting or strenuous activity" and to return the following week. At his follow-up visit, Dr. Ellis' notes reflect he instructed Cranford to "be taking it easy" and to notify Dr. Ellis if he experienced any additional problems.

Cranford was out of work for three weeks, during which time Hutchinson paid him $265 per week in lieu of temporary disability benefits. When Cranford returned to work on August 13, 2007, Hutchinson restricted him to light-duty activities, but then Hutchinson terminated Cranford on August 31, 2007, for being unsafe on the job site. Hutchinson filed a Form 15 claiming Cranford was no longer entitled to temporary compensation because Cranford had worked a minimum of fifteen days prior to his termination.

After Hutchinson fired Cranford, he obtained employment with a greenhouse from early September until November 21, 2007. While working at the greenhouse, Cranford made deliveries, watered plants, and lifted fifty to sixty pound bags of fertilizer two to four times per day twice a week. He earned on average $163.96 per week.

Cranford's complaints of back pain resurfaced following his brief employment with the greenhouse. In response to his complaints of back pain, Hutchinson sent him to Doctor's Care on January 11, 2008. Doctor's Care restricted him from lifting more than ten pounds and instructed him to return for a follow-up visit in one week. Cranford returned ten weeks later on March 25, 2008. Doctor's Care then referred him to an orthopedic surgeon, Dr. William Edwards.[1]

---

1. Dr. Edwards' notes reflect that Cranford's mother also requested Doctor's Care refer Cranford to Dr. Edwards for additional medical treatment.

Cranford saw Dr. Edwards on May 15, 2008, with lower back complaints. Dr. Edwards' notes reflect that Cranford told him he had been out of work since his initial injury. Dr. Edwards ordered an MRI on May 21, 2008, and Cranford returned to Dr. Edwards on June 3, 2008. On June 3, 2008, Dr. Edwards concluded Cranford had reached MMI with no evidence of permanent impairment. Dr. Edwards noted Cranford could return to work with "the use of good body mechanics and careful lifting techniques."

Upon referral from Cranford's attorney, Cranford underwent a subsequent evaluation with Dr. Timothy Zgleszewski on July 22, 2008. Dr. Zgleszewski diagnosed Cranford with sacroiliitis and opined to a reasonable degree of medical certainty that Cranford was not at MMI and should remain out of work until further testing and treatment were completed. Hutchinson refused to provide the treatment recommended by Dr. Zgleszewski.

After Cranford saw Dr. Edwards and Dr. Zgleszewski, he briefly worked at a machinery plant as a machine operator from September 12, 2008 until November 7, 2008. He testified this position did not require any heavy lifting responsibilities. Cranford earned $469.98 per week as a machine operator before he was laid off by the machinery plant.

In response to Hutchinson's refusal to provide additional medical treatment, Cranford filed a Form 50 on January 15, 2009, in which he requested a hearing as well as additional medical treatment for his back and arms and temporary disability benefits. In response, Hutchinson timely filed a Form 51, admitting laceration/disfigurement to the right and left arms and an injury to the back. Hutchinson, however, maintained Cranford reached maximum medical improvement (MMI) for all injuries and denied Cranford was entitled to temporary disability benefits.

Prior to Cranford's hearing, he again returned to Dr. Zgleszewski on April 23, 2009, with complaints of reoccurring lower back pain, occasional numbness in his hands, and problems with lifting and twisting. Dr. Zgleszewski opined Cranford suffered a 10% impairment rating to his back and a 9% whole person impairment rating based on the scars on his arms.

The single commissioner held a hearing on May 14, 2009. The commissioner subsequently issued an order on September 28, 2009, awarding Cranford four weeks of compensation to his left arm and eight weeks of compensation to his right arm for the disfigurement caused by his fall. The commissioner agreed with Dr. Edwards' conclusions that Cranford had suffered no permanent impairment to his back and consequently found a 0% disability to Cranford's back. In addition, the single commissioner found Cranford failed to demonstrate by a preponderance of the evidence that he was entitled to any temporary disability benefits or additional medical treatment. Cranford appealed the single commissioner's order, and in a form order, the Appellate Panel affirmed the single commissioner in full. This appeal followed.

## STANDARD OF REVIEW

■ The Administrative Procedures Act (APA) establishes the standard for judicial review of workers' compensation decisions. *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 540, 689 S.E.2d 615, 618 (2010). Under the APA, this court can reverse or modify the decision of the Appellate Panel when the substantial rights of the appellant have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence considering the record as a whole. *Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689–90 (2010).

■ When the evidence is conflicting over a factual issue, the findings of the Appellate Panel are conclusive. *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 290, 599 S.E.2d 604, 611 (Ct.App.2004). In workers' compensation cases, the Appellate Panel is the ultimate finder of fact. *Shealy v. Aiken Cnty.*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). "The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel." *Frame v. Resort Servs., Inc.*, 357 S.C. 520, 528, 593 S.E.2d 491, 495 (Ct.App.2004) (internal citation omitted). Accordingly, this court will not overturn a finding of fact by the Appellate Panel "unless there is no reasonable probability that the facts could be as related by a witness upon whose testimony the

finding was based." *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 136, 276 S.E.2d 304, 307 (1981) (internal citation omitted).

## LAW/ANALYSIS

### I. Temporary Disability Compensation

■ Cranford first claims the Appellate Panel erred in failing to order Hutchinson to pay him temporary disability benefits. We agree.

Section 42–1–120 of the South Carolina Code (1985) defines disability as the "incapacity because of injury to earn the wages which an employee was receiving at the time of the injury in the same or some other employment." During the period of disability, an employer may pay temporary total or partial compensation, or salary in lieu of compensation, to the injured employee. *See* 25A S.C.Code Ann. Regs. 67–503(B) (Supp.2011). Whether compensation is partial or total depends on whether the employee is partially or totally incapacitated from the injury. *See* S.C.Code Ann. §§ 42–9–10, –20 (1985 & Supp.2011), 25A S.C.Code Ann. Regs. 67–502(E), (F) (Supp.2011).

Temporary disability benefits are triggered "[w]hen an employee has been out of work due to a reported work-related injury ... for eight days[.]" S.C.Code Ann. § 42–9–260(A) (Supp.2011). Once temporary disability payments have commenced, these benefits "may be terminated or suspended immediately at any time within the one hundred fifty days if ... the employee has returned to work; however, if the employee does not remain at work for a minimum of fifteen days, temporary disability payments must be resumed immediately[.]" S.C.Code Ann. § 42–9–260(B)(1) (Supp.2011).

When Hutchinson terminated Cranford's benefits, it claimed in its Form 15 that Cranford was no longer entitled to compensation because he had been at work for "at least 15 days and no temporary partial compensation was due." While Cranford was at work for fifteen days prior to his termination, we disagree with Hutchinson's claim that Cranford was no longer entitled to temporary compensation.

We find the case of *Grayson v. Carter Rhoad Furniture,* 312 S.C. 250, 439 S.E.2d 859 (Ct.App.1993), *aff'd as modified by Grayson v. Carter Rhoad Furniture,* 317 S.C. 306, 454

S.E.2d 320 (1995), is instructive. Grayson was employed with Carter Rhoad to lift and move furniture. *Grayson*, 312 S.C. at 252, 439 S.E.2d at 860. In August 1990, he injured his back while working. *Id.* In December 1990, the treating physician, Dr. Graziano, released him to return to work, although he advised Grayson to be "somewhat careful with lifting." *Id.* at 252–53, 439 S.E.2d at 860. Grayson returned to his job on December 17, 1990. *Id.* He testified that he did his job the best he could, but was not able to do it as well as before his injury, and that the work was causing him a lot of pain. *Id.* Three weeks later, Carter Rhoad terminated Grayson's employment. *Id.* Grayson claimed he was still disabled and entitled to additional benefits. *Id.*

The single commissioner found Grayson was in need of further medical treatment but had not proven he was entitled to any additional temporary total disability benefits. *Id.* The commissioner ordered Carter Rhoad to have Grayson evaluated by a neurologist and to provide any treatment the neurologist believed necessary. *Id.* The commissioner also held that if Dr. Graziano or the neurologist excused Grayson from work, Carter Rhoad would have to pay temporary total disability benefits during that time. *Id.*

The full commission affirmed the single commissioner's decision. *Id.* Grayson petitioned for judicial review. *Id.* Finding the decision was not supported by substantial evidence, the circuit court reversed and remanded for entry of an order commencing temporary total benefits as of the date that Carter Rhoad fired Grayson, to run until further order of the commission. *Id.* Carter Rhoad appealed. *Id.*

On appeal, the court of appeals held the single commissioner's administrative findings were "clearly erroneous" because they were based on a "mistaken view of evidence." On writ of certiorari, the supreme court modified this court's opinion. *See Grayson v. Carter Rhoad Furniture*, 317 S.C. 306, 454 S.E.2d 320 (1995). The supreme court held that because Grayson was released with work restrictions, there was in reality *no* evidence that Grayson's period of temporary total disability ever ended prior to his firing. *Id.* at 310, 454 S.E.2d at 322. Because Grayson's benefits were never properly

terminated in accordance with Regulation 67–504,[2] Grayson was entitled to have his temporary benefits reinstated. *Id.*

Like Grayson, Cranford was injured while working for his employer and was paid temporary compensation while out of work. Grayson was released to work with the instructions to "be somewhat careful with lifting." Similarly, Cranford's discharge report from Conway Medical Center instructed Cranford to refrain from "heavy lifting" and "strenuous activity." In addition, Dr. Ellis, the attending surgeon at Conway Medical Center, instructed Cranford to "take it easy." No other physician treated Cranford prior to him returning to work; thus, as in *Grayson*, there is no other evidence in the record Cranford was released to work without restriction.

Both employers terminated their employees shortly after the employees returned to work while the employees were still under work restrictions. Grayson was fired for not having a driver's license and Cranford was fired for being unsafe on the job site.[3] Both terminations occurred approximately three weeks after returning to work. Prior to the firing, Grayson signed a Form 17, agreeing he was able to return to work. Cranford, on the other hand, never signed a Form 17, but instead had his benefits unilaterally terminated on the grounds that he had "returned to work at least 15 days and no temporary partial compensation [wa]s due."

While Regulation 67–504 was amended in 1997, under the prior and amended version, Hutchinson's firing of Cranford after the fifteen-day window would still require Hutchinson to

---

**2.** The relevant portion of Regs. 67–504 in effect at that time stated: "When the claimant reaches maximum medical improvement and the authorized health care provider reports the claimant is able to return to work without restriction to the same job or other suitable job, and such a job is provided by the employer, or the claimant agrees he or she is able to return to work without restriction, the employer's representative may suspend compensation benefits by complying with section D below."

**3.** Hutchinson terminated Cranford on August 31, 2007, seventeen days after returning to work, for being unsafe on the job site. Cranford testified Hutchinson fired him because "he was getting worried [about] me getting hurt in another accident, getting killed or dying of a heart attack." While Cranford argues in his brief that Hutchinson's motivation for firing him was pretextual, the propriety of his firing is not before this court.

pay temporary disability unless: (1) a physician determines Cranford is able to "return to work without restriction";[4] or (2) a physician determines Cranford has reached maximum medical improvement such that permanent disability benefits, as opposed to temporary benefits, should be awarded if warranted. *See Smith v. S.C. Dep't. of Mental Health,* 335 S.C. 396, 399, 517 S.E.2d 694, 695–96 (1999) ("Clearly, if an employee has reached MMI and remains disabled, then his injury is permanent. This is precisely the reason to terminate temporary benefits in favor of permanent benefits upon a finding of MMI.").

Under both scenarios, Cranford was not released to "return to work without restriction" until June 3, 2008, the date on which Dr. Edwards opined Cranford had reached MMI and concluded Cranford could return to work "with the use of good body mechanics and careful lifting techniques." Despite Cranford's argument that the latter caveat was tantamount to continued work restrictions, we find Dr. Edwards' express approval of returning to work and finding of no permanent impairment equates to "returning to work without restriction." Accordingly, we conclude Hutchinson was required to pay Cranford temporary disability benefits from the day after his termination, September 1, 2007, until he achieved MMI and was authorized to return to work without restriction on June 3, 2008. We remand Cranford's entitlement to partial and/or total temporary disability as well as the corresponding compensation to the Appellate Panel for computation.[5]

---

4. Pursuant to 25A S.C.Code Ann. Regs. 67–502(D) (Supp.2011), "return to work without restriction" is defined as follows:

 A statement of the authorized health care provider about the capacity of the claimant to meet the demands of a job and the conditions of employment. The determination must be made when the claimant's physical condition is static or is stabilized with or without medical treatment. The determination is appropriate when there are no physical limitations on the claimant's ability to perform the same or other suitable job as the claimant performed before the injury.

5. Cranford also argues the Appellate Panel erred in failing to award him temporary benefits because Hutchinson failed to properly commence and terminate Cranford's benefits. Because we reverse and remand his entitlement to temporary compensation based on the foregoing, we decline to address this argument. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598

## II. Maximum Medical Improvement

Next, Cranford claims the Appellate Panel erred in affirming the single commissioner's finding that he had reached MMI for his back and arms, particularly when the single commissioner failed to explicitly find Cranford reached MMI. We agree in part.

 "Maximum medical improvement is a term used to indicate that a person has reached such a plateau that in the physician's opinion there is no further medical care or treatment which will lessen the degree of impairment." *O'Banner v. Westinghouse Elec. Corp.*, 319 S.C. 24, 28, 459 S.E.2d 324, 327 (Ct.App.1995). "MMI is a factual determination left to the discretion of the [Appellate] [P]anel." *Gadson v. Mikasa Corp.*, 368 S.C. 214, 224, 628 S.E.2d 262, 268 (Ct.App.2006).

 Regarding Cranford's back, the single commissioner did not make any explicit findings about whether Cranford achieved MMI. However, the single commissioner agreed with Dr. Edwards' 0% impairment rating and concluded that Cranford had a 0% disability to his back. Additionally, the single commissioner concluded as a matter of law that based on Dr. Edwards' testimony, "no further medical treatment will lessen [Cranford's] period of disability." In making these conclusions, the single commissioner, and ultimately the Appellate Panel, implicitly held that Cranford had achieved MMI for his back. *See O'Banner*, 319 S.C. at 28, 459 S.E.2d at 327 ("Maximum medical improvement is a term used to indicate that a person has reached such a plateau that in the physician's opinion *there is no further medical care or treatment which will lessen the degree of impairment.*") (emphasis added).

 Additionally, there is substantial evidence in the record to conclude Cranford attained MMI no later than June 3, 2008. Specifically, Cranford was able to maintain two jobs after his injury, the first of which involved routine stooping, bending over, and lifting. Despite Cranford's testimony that he was limited in the tasks he could undertake, he also testified on the date of the hearing he was physically capable of working "full

(1999) (stating an appellate court need not address an issue when a decision on a prior issue is dispositive).

time at medium to light duty." In addition, Cranford did not seek medical treatment for almost six months after his injury. When Cranford eventually sought medical treatment, he was instructed by Doctor's Care to follow up in one week, yet Cranford failed to return for another ten weeks. When Cranford did return, the X–Rays of his back were normal.

Because Cranford claimed continued back pain, Doctor's Care referred him to Dr. Edwards. After an MRI scan, Dr. Edwards noted a minimal disc protrusion at his L5–S1 disc, but he noted it did not likely have any clinical significance. Dr. Edwards also concluded Cranford had attained MMI and stated returning to work was acceptable with "the use of good body mechanics and careful lifting techniques." Cranford claims Dr. Edwards' caveat and prescription of Flexeril for his muscle spasms is evidence that Cranford has not reached MMI. To the contrary, Dr. Edwards' report coupled with the thirty-day prescription of Flexeril constitutes evidence from which the single commissioner could conclude the medication would help to temporarily alleviate Cranford's remaining symptoms, but his medical condition would not further improve. *See O'Banner*, 319 S.C. at 28, 459 S.E.2d at 327 (disagreeing with claimant's assertion that doctor's prescription of medication after discharge was evidence claimant had not reached MMI because substantial evidence in record existed to show that medication helped to temporarily alleviate claimant's remaining symptoms despite the fact that his medical condition would not further improve).

As to Cranford's arms, the single commissioner never made a finding of MMI to his arms. The single commissioner's only finding pertaining to Cranford's arms was an award for disfigurement for his keloid scars in the amount of four weeks of compensation for his left arm and eight weeks of compensation for his right arm. We note a disfigurement award is generally not proper prior to a finding of MMI. *See Halks v. Rust Engineering Co.*, 208 S.C. 39, 48, 36 S.E.2d 852, 855–56 (1946) (reversing award for disfigurement when claimant was receiving temporary total disability benefits because receipt of temporary disability established he had not attained MMI, which was a prerequisite for permanent disfigurement award). However, both parties stipulated to this award, and

Cranford does not appeal the propriety of the disfigurement award.

Regardless, the issue of disfigurement is separate from the issue of permanent disability in the instant case.[6] As such, an explicit finding for MMI is still necessary because it is also relevant to Cranford's entitlement to permanent disability. Thus, we remand for specific findings on this issue.

### III. Permanent Disability Benefits

Next, Cranford contends the Appellate Panel erred in failing to award him permanent partial disability benefits based on the injuries to his back, arms, and skin. We agree in part.

In the single commissioner's order, he concluded Cranford did not sustain any permanent partial disability to his back under section 42–9–30. In making this conclusion, the single commissioner considered Cranford's six-month delay in seeking medical treatment from Doctor's Care in addition to his failure to follow-up with Doctor's Care for ten weeks, despite instructions to return within one week of his initial visit.

Further, Dr. Edwards' medical opinion supports the single commissioner's and the Appellate Panel's conclusion. After being referred to Dr. Edwards, Cranford underwent an MRI, which revealed no evidence of a fracture. Dr. Edwards found a minimal disc protrusion at L5–S1, but he concluded it was likely of no clinical significance. Dr. Edwards noted Cranford sustained a lumbar sprain and accordingly prescribed him one

---

6. An employee may be entitled to both a disability and a disfigurement award when an injury is in the form of a keloid scar. *See* S.C.Code Ann. § 42–9–30(23) (Supp.2011) ("[P]roper and equitable benefits must be paid for serious permanent disfigurement of the face, head, neck, or other area normally exposed in employment, not to exceed fifty weeks. Where benefits are paid or payable for injury to or loss of a particular member or organ under other provisions of this title, additional benefits must not be paid under this item, *except that disfigurement also includes compensation for serious burn scars or keloid scars on the body resulting from injuries, in addition to any other compensation.*") (emphasis added); *see generally Mason v. Woodside Mills,* 225 S.C. 15, 21, 80 S.E.2d 344, 347–48 (1954) (finding employee was entitled to disability and disfigurement for work-related accident that caused not only loss of use to his arm but significant atrophy to his arm resulting in disfigurement).

month of Flexeril to temporarily alleviate his discomfort. In approving the occasional use of Flexeril for a limited period of time, he concluded Cranford was capable of returning to work with "the use of good body mechanics and careful lifting techniques." The single commissioner acknowledged Cranford's visit to Dr. Zgleszewski. Hutchinson claims the Appellate Panel afforded less weight to Dr. Zgleszewski's medical reports based on the timing of Cranford's visits and the fact that his visits were at the behest of Cranford's attorney. The nature and timing of Cranford's visits do not discredit Dr. Zgleszewski's medical opinion. We find both parties presented credible conflicting medical evidence. The single commissioner, and ultimately the Appellate Panel, had the discretion to weigh the conflicting evidence in rendering its decision. Thus, we defer to its findings on this issue. *See Mullinax v. Winn–Dixie Stores, Inc.,* 318 S.C. 431, 435, 458 S.E.2d 76, 78 (Ct.App.1995) ("Where the medical evidence conflicts, the findings of fact of the [Appellate Panel] are conclusive.").

The single commissioner, however, failed to make any conclusions on whether Cranford sustained permanent disabilities to his skin or arms. Without specific findings regarding whether Cranford suffered a permanent impairment to his arms and skin, we remand this issue to the Appellate Panel to make specific findings on Cranford's impairment to his arms and skin based on the evidence, and consequently, his entitlement to permanent partial disability benefits. *See Baldwin v. James River Corp.,* 304 S.C. 485, 486, 405 S.E.2d 421, 422 (Ct.App.1991) (finding that without specific and definite findings upon the evidence, this court could not review the Appellate Panel's decision that a claimant sustained neither an injury to his back nor a permanent disability to his right arm, particularly when those were material facts in issue).

## IV. Additional Medical Treatment

Finally, Cranford contends the Appellate Panel erred in affirming the single commissioner's finding that he was not entitled to additional medical treatment for his back. We disagree.

Section 42–15–60 of the South Carolina Code (Supp. 2011) provides for "[m]edical, surgical, hospital, and other

treatment, including medical and surgical supplies as may reasonably be required, for a period not exceeding ten weeks from the date of an injury, to effect a cure or give relief and for such additional time as in the judgment of the Appellate Panel will tend to lessen the period of disability...." Pursuant to this section, an employer may be liable for a claimant's future medical treatment if it tends to lessen the claimant's period of disability even if the claimant has returned to work and has reached maximum medical improvement. *Dodge v. Bruccoli, Clark, Layman, Inc.,* 334 S.C. 574, 583, 514 S.E.2d 593, 598 (Ct.App.1999); *see also Scruggs v. Tuscarora Yarns, Inc.,* 294 S.C. 47, 50, 362 S.E.2d 319, 321 (Ct.App.1987) (holding substantial evidence supported a finding of maximum medical improvement despite the claimant continuing to receive physical therapy); *O'Banner,* 319 S.C. at 28, 459 S.E.2d at 327 (finding claimant's receipt of prescriptive medicines after he had reached maximum medical improvement constituted substantial evidence from which the single commissioner could conclude the medication helped to temporarily alleviate the claimant's remaining symptoms, but his medical condition would not further improve).

The relevant inquiry is not whether Cranford attained MMI for his back, but whether additional medical treatment and medication will tend to lessen his period of disability. *See generally Dodge,* 334 S.C. at 581, 514 S.E.2d at 596 (finding whether employee reached MMI was irrelevant to entitlement to permanent disability benefits because " '[m]aximum medical improvement' is a distinctly different concept from 'disability.' "). Again, because the medical evidence is conflicting on this issue, we must defer to the Appellate Panel. *See Tiller v. Nat'l Health Care Ctr. of Sumter,* 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999) ("Where there is a conflict in the evidence, either by different witnesses or in the testimony of the same witness, the findings of fact of the Commission are conclusive."). In Dr. Edwards' June 3, 2008 report, he diagnosed Cranford with a lumbar strain/sprain, but he concluded it was acceptable for Cranford to take an occasional Flexeril for muscle spasms and wrote Cranford a thirty-day prescription for Flexeril. Because Dr. Edwards opined Cranford

suffered no permanent impairment, the single commissioner concluded Cranford sustained a 0% disability to his back. Although Dr. Zgleszewski documented muscle spasms on July 22, 2008 and on April 23, 2009, and opined that additional treatment would alleviate Cranford's pain, numbness, and spasms in his back, the Appellate Panel afforded more weight to Dr. Edwards' testimony in determining further medical treatment would not lessen Cranford's period of disability. *See id.* at 340, 513 S.E.2d at 846. ("Expert medical testimony is designed to aid the Commission in coming to the correct conclusion; therefore, the Commission determines the weight and credit to be given to the expert testimony."). Accordingly, we affirm the Appellate Panel on this issue.

## CONCLUSION

Based on the foregoing, we reverse the Appellate Panel's decision to deny Cranford temporary disability benefits and remand for a determination of the amount of temporary compensation due to Cranford from the day after his termination, September 1, 2007, until he achieved MMI and was authorized to return to work without restriction on June 3, 2008. We affirm the finding of MMI to Cranford's back but remand the issue of MMI for Cranford's arms to the Appellate Panel based on its failure to rule on this issue. We affirm the Appellate Panel's conclusion that Cranford is not entitled to permanent partial disability benefits for his back but remand the issue of permanent disability for his arms and skin to the Appellate Panel based on the single commissioner's and Appellate Panel's failure to rule on these issues. Lastly, we affirm the Appellate Panel's conclusion that Cranford was not entitled to additional medical treatment.

Accordingly, the Appellate Panel's decision is

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED IN PART.**

SHORT and GEATHERS, JJ., concur.