**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Renee Robles, Employee, Claimant, Appellant,

v.

Party Reflections, Inc., Employer, and Employers Assurance Company, Carrier, Respondents.

Appellate Case No. 2016-002266

Appeal From The Workers' Compensation Commission

Unpublished Opinion No. 2019-UP-177
Submitted March 5, 2019 – Filed May 22, 2019

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

Mark Reagan Calhoun, Sr., of Calhoun Law Firm, of Lexington; and Stephen Benjamin Samuels, of Samuels Law Firm, LLC, of Columbia, both for Appellant.

Christian Stegmaier, Ashley Ryon Kirkham, and Kelsey Jan Brudvig, all of Collins & Lacy, PC, of Columbia, for Respondents.

**PER CURIAM:** Renee Robles injured his back at work and filed a workers' compensation claim against his employer, Party Reflections (Employer). Robles

appeals the order of the Appellate Panel of the Workers' Compensation Commission (Appellate Panel), arguing the Appellate Panel erred in (1) basing his average weekly wage (AWW) on fourteen weeks of wages with Employer, (2) finding he was not entitled to temporary total disability (TTD) benefits from the date of his injury until the present, and (3) finding he was not entitled to TTD benefits as a result of his June independent medical examination (IME). We affirm in part, reverse in part, and remand.

"On appeal from an appellate panel of the Workers' Compensation Commission, this [c]ourt can reverse or modify the decision if it is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record." *Nicholson v. S.C. Dep't of Soc. Servs.*, 411 S.C. 381, 384, 769 S.E.2d 1, 2 (2015). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Fishburne v. ATI Sys. Int'l*, 384 S.C. 76, 85, 681 S.E.2d 595, 600 (Ct. App. 2009) (quoting *Palmetto Alliance, Inc. v. S.C. Pub. Serv. Comm'n*, 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984)). "In a workers' compensation case, the Appellate Panel is the ultimate fact-finder." *Nicholson*, 411 S.C. at 384, 769 S.E.2d at 3. "The final determination of witness credibility and the weight to be accorded evidence is reserved to the [Appellate Panel]." *Ross v. Am. Red Cross*, 298 S.C. 490, 492, 381 S.E.2d 728, 730 (1989). "Where there are conflicts in the evidence over a factual issue, the findings of the Appellate Panel are conclusive." *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 290, 599 S.E.2d 604, 611 (Ct. App. 2004).

## CALCULATION OF AWW

Robles argues the Appellate Panel erred by using his actual earnings with Party Reflections to calculate his AWW instead of the fifty-two weeks of earnings preceding his injury. We disagree.

AWW "means the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury." S.C. Code Ann. § 42-1-40 (2015). AWW "must be calculated by taking the total wages paid for the last four quarters immediately preceding the quarter in which the injury occurred . . . divided by fifty-two or by the actual number of weeks for which wages were paid, whichever is less." *Id.*

> When the employment, prior to the injury, extended over a period of less than fifty-two weeks, the method of

> dividing the earnings during that period by the number of
> weeks and parts thereof during which the employee
> earned wages shall be followed, as long as results fair
> and just to both parties will be obtained.

*Id.* Thus, before the Appellate Panel can use the actual earnings method, "two predicate conditions must exist": (1) "it must be 'practicable' to use the . . . method" and (2) "the calculation must yield a result which is 'fair and just to both parties.'" *Pilgrim v. Eaton*, 391 S.C. 38, 46, 703 S.E.2d 241, 245 (Ct. App. 2010) (quoting § 42-1-40). Although the Appellate Panel "should make factual findings of these two predicate conditions . . . [i]n some situations . . . it may be clear from the record that both of the two predicate conditions exist." *Id.*

We disagree with Robles that the Appellate Panel erred in considering Employer's argument that Robles's AWW should be based on his actual earnings with Employer instead of the fifty-two weeks preceding the back injury. While Employer focused its argument before the single commissioner on the fifty-two weeks directly preceding Robles's back injury, this was in response to Robles arguing the commissioner should base his AWW on the fifty-two weeks preceding his first work-related injury in April 2013. However, in its Form 51 answer to Robles's request for a hearing, Employer indicated his AWW should be based on his actual earnings with Employer.

We find the record contains substantial evidence to support the Appellate Panel's finding that Robles's AWW should be based on his actual earnings because he worked for Employer less than fifty-two weeks. *See Hargrove*, 360 S.C. at 289, 599 S.E.2d at 610–11 (stating the substantial evidence rule governs the standard of review in a workers' compensation decision). The Appellate Panel based Robles's AWW on the method provided by the statute for when an employee has worked for an employer less than fifty-two weeks. *See* § 42-1-40 (explaining the Appellate Panel should take the actual earnings of an employee and divide it by the number of weeks worked when an employee worked for an employer for less than a year). Employer bought the company from Palmetto Party Rentals in December 2013. However, the record contains little to no evidence about the change between Palmetto Party Rentals and Employer. Robles testified his supervisors were the same with the two companies, and Adam Vance testified he worked for both. Robles also testified he worked the same hours with Employer that he did with Palmetto Party Rentals but he had a different hourly rate at the two companies. Despite the overlaps between the employees and the nature of work of Palmetto Party Rentals and Employer, we find substantial evidence supported the Appellate

Panel's finding that Robles only worked for Employer for fourteen weeks. *See Hargrove*, 360 S.C. at 290, 599 S.E.2d at 611 ("Where there are conflicts in the evidence over a factual issue, the findings of the Appellate Panel are conclusive.").

Although the statute allows the Appellate Panel to deviate from the actual earnings method when it is not fair to the employee, no evidence shows the actual earnings method was not fair to Robles. Robles cites to *Pilgrim* to argue it would be unfair to ignore previous earnings "every time there was a change in ownership of a continuously operating business." In *Pilgrim*, this court found the Appellate Panel erred in applying the actual earnings method to calculate AWW when the employee only worked at the employer for less than one week because "29.5 hours of wage data cannot yield a reasonably accurate calculation of an average that is designed to be based on a year of data." 391 S.C. at 45–46, 703 S.E.2d at 244–45. However, in the instant case, Robles worked for Party Reflections for a period of fourteen weeks. Although Robles made different hourly rates with Palmetto Party Rentals and Employer, he testified his hourly rate only differed by a dollar. The Appellate Panel found the actual earnings method was "a fair reflection" of Robles's earnings and there were no exceptional circumstances to deviate from the method provided in the statute. We agree and find substantial evidence supports the Appellate Panel's finding that the actual earnings method was practicable and fair to Robles. *See id.* at 46, 703 S.E.2d at 245 (explaining the actual earnings method must be practicable to use and the calculation must yield a fair result for both parties).

## TTD FROM THE DATE OF THE INJURY UNTIL MMI

Robles argues the Appellate Panel erred in denying his request for TTD because he was out of work for a period of twenty-nine days—from March 17 to April 14. We disagree.

"Pursuant to section 42-9-260 [of the South Carolina Code (2015)] and the accompanying regulations, the entitlement of TTD benefits is premised on a nexus between the work-related injury and the inability to earn wages. An injured employee will be entitled to TTD compensation when his incapacity to earn wages is due to or because of the injury." *Pollack v. S. Wine & Spirits of Am.*, 405 S.C. 9, 15, 747 S.E.2d 430, 433 (2013). "Temporary disability benefits are triggered '[w]hen an employee has been out of work due to a reported work-related injury . . . for eight days[.]'" *Cranford v. Hutchinson Constr.*, 399 S.C. 65, 73, 731 S.E.2d 303, 307 (Ct. App. 2012) (quoting S.C. Code Ann. § 42-9-260(A) (Supp. 2011)). "Workers' compensation awards have generally provided for [TTD] benefits until maximum medical improvement, at which point a claimant receives

permanent partial disability if warranted." *O'Banner v. Westinghouse Elec. Corp.*, 319 S.C. 24, 28, 459 S.E.2d 324, 326 (Ct. App. 1995). "Once temporary disability payments are commenced, the payments may be terminated or suspended immediately . . . if[ ] the employee has returned to work; however, if the employee does not remain at work for a minimum of fifteen days, temporary disability payments must be resumed immediately . . . ." S.C. Code Ann. § 42-9-260(B) (2015). "For [TTD] benefits, a claimant must prove only that work restrictions prevent him from performing the job he had before the injury, and that his current employer has not offered him light-duty employment." *Lee v. Bondex, Inc.*, 406 S.C. 97, 102, 749 S.E.2d 155, 157 (Ct. App. 2013).

We find Robles's argument that he was out of work for a period of twenty-nine days—from March 17 to April 14—is not preserved. The single commissioner found Robles was only entitled to TTD beginning on April 7 until he reached MMI. The single commissioner specifically found Employer "complied with the work restrictions after" the two March doctor's visits. However, Robles did not appeal this finding to the Appellate Panel. Thus, Robles is precluded from arguing he was entitled to TTD from the period of time between his injury and April 7. *See In re Morrison*, 321 S.C. 370, 372 n.2, 468 S.E.2d 651, 652 n.2 (1996) (noting an unappealed ruling becomes the law of the case and precludes further consideration of the issue on appeal).

We also disagree with Robles's argument that he was entitled to TTD beginning on April 7 until he reached MMI. There is no dispute Employer sent Robles home on April 7 and he never returned to work with Employer after that date. However, the April 7 doctor's note indicated Robles could return to work full duty on April 14 and instructed him to make another appointment if he was not better by then. Robles did not return to the doctor until the June IME. The Appellate Panel found Robles was released to full duty on April 14. Although Robles argued he did not understand he would be released to full duty on April 14 if he did not return to the doctor, the Appellate Panel found Robles (1) answered questions in his deposition without the use of an interpreter, (2) understood the temporary work restrictions in the return to work form, and (3) signed the return to work form stating he understood everything that was in it. We agree and find the record contains substantial evidence to support the Appellate Panel's findings that Robles was released to return to work at full duty on April 14. *See Nicholson*, 411 S.C. at 384, 769 S.E.2d at 3 ("In a workers' compensation case, the Appellate Panel is the ultimate fact-finder."). Because Robles was only out of work between April 7 and April 14, a period of seven days, he was not entitled to TTD. *See* S.C. Code Ann. § 42-9-260(A) (2015) (explaining an employee is only entitled to begin receiving

temporary benefits after he has been out of work due to a work-related injury for eight days).  Thus, we find the Appellate Panel did not err in refusing to award TTD for the period of March 16 until Robles reached MMI.

**TTD FROM JUNE IME UNTIL MMI**

In the alternative, Robles contends the Appellate Panel erred by not awarding him TTD as of June 2, 2014, when his IME doctor placed him on work restrictions. We agree.

"Pursuant to section 42-9-260 [of the South Carolina Code (2015)] and the accompanying regulations, the entitlement of TTD benefits is premised on a nexus between the work-related injury and the inability to earn wages.  An injured employee will be entitled to TTD compensation when his incapacity to earn wages is due to or because of the injury." *Pollack*, 405 S.C. at 15, 747 S.E.2d at 433. "Temporary disability benefits are triggered '[w]hen an employee has been out of work due to a reported work-related injury . . . for eight days[.]'" *Cranford*, 399 S.C. at 73, 731 S.E.2d at 307 (quoting § 42-9-260(A)).

We find substantial evidence does not support the Appellate Panel's denial of TTD from June until MMI and reverse on this issue.  *See Hargrove*, 360 S.C. at 289, 599 S.E.2d at 610–11 (stating the substantial evidence rule governs the standard of review in a workers' compensation decision).  Both the single commissioner and the Appellate Panel found Robles was not at MMI.  The Appellate Panel ordered Employer to provide Robles with a consultation with an orthopedist and any causally-related medical treatment.  Although Robles was able to return to full duty on April 14 according to the Doctor's Care return to work form, he was written out of work again on June 2 during the IME with Dr. W. Daniel Westerkam.  Dr. Westerkam gave Robles work restrictions to lift no greater than forty pounds regularly and twenty pounds frequently and no repetitive bending, stooping, squatting, or crawling.  While it is true Dr. Westerkam evaluated Robles for separate workers' compensation injuries to his wrist and knee as well as his back, we find the work restrictions are clearly related to the back because Robles was able to return to work full duty after his wrist and knee injury.  Furthermore, Dr. Westerkam's restrictions mirror the restrictions Robles received in the past for his back injury.   Although the determination of whether an employee is entitled to TTD is generally a question for the Appellate Panel, here the Appellate Panel did not make any findings of fact or consider the work restrictions by Dr. Westerkam. *See Pollack*, 405 S.C. at 15–16, 747 S.E.2d at 433 (explaining the determination of entitlement to TTD is "a quintessential factual question for the fact-finder, the

Commission").  Because Robles cannot work full duty as of the June IME, we find the Appellate Panel's finding that Robles is not entitled to TTD is unsupported by substantial evidence.  Thus, we reverse and find Robles is entitled to TTD beginning June 2, 2014, until he reaches MMI and remand for further proceedings to determine the amount of TTD benefits to which Robles is entitled.  *See O'Banner*, 319 S.C. at 28, 459 S.E.2d at 326 ("Workers' compensation awards have generally provided for [TTD] benefits until maximum medical improvement, at which point a claimant receives permanent partial disability if warranted.").

Accordingly, the order of the Appellate Panel is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[1]

**HUFF, THOMAS, and KONDUROS, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.