HUFF and THOMAS, JJ., concur.

741 S.E.2d 761

Thomas Lee **BROWN**, Appellant,

v.

**PEOPLEASE CORPORATION and Arch Insurance Company,**
c/o Gallagher Bassett Services, Inc., Respondents.

Appellate Case No. 2011–196726.

No. 5082.

Court of Appeals of South Carolina.

Heard Oct. 16, 2012.
Decided Feb. 13, 2013.
Withdrawn, Substituted and Refiled March 27, 2013.

---

478

Preston F. McDaniel, of the McDaniel Law Firm, of Columbia, for Appellant.

Weston Adams, III, and Helen Faith Hiser, both of McAngus Goudelock & Courie, LLC, of Columbia, for Respondents.

SHORT, J.

In this workers' compensation case arising out of an automobile accident, Thomas Brown appeals, arguing: (1) the Appellate Panel of the South Carolina Workers' Compensation Commission (Appellate Panel) erred by (a) not granting him lifetime medical care for his lower back problems, (b) not raising the compensation rate to $591.73, and (c) not writing its order; and (2) the court of appeals erred by denying Brown's motion for leave to present additional evidence to the Workers' Compensation Commission (the Commission) pursuant to section 1–23–380(3) of the South Carolina Code (Supp. 2012). We affirm.

**FACTS**

On May 2, 2008, a passenger vehicle collided with the truck Brown was driving. At the time of the accident, Peoplease Corporation employed Brown to drive a truck for Bulldog Trucking, and Brown had been working for the company for approximately 16 weeks. After the accident, doctors treated Brown for pain in the cervical region of his neck and performed two surgeries on his neck. Brown's diabetes also worsened following the accident, and he is now insulin dependent.

Brown filed a Form 50 on July 13, 2010, seeking an award for permanent and total disability benefits with lifetime medical care for his neck, back, and arm pain from the accident. Peoplease Corporation and Arch Insurance Company, c/o Gallagher Bassett Services, Inc., (collectively, Respondents) admitted Brown sustained a compensable injury by accident arising out of and in the course of his employment; however,

they denied Brown sustained injuries to his lower back and arms.

On October 22, 2010, the single commissioner heard the matter. In his order, the commissioner noted the only issues before him were a determination of Brown's entitlement to a disability award and the resulting average weekly wage and compensation rate to be applied. He determined Brown is permanently and totally disabled based on the combination of his cervical injury and the aggravation of his underlying diabetes; however, he found no specific medical report tied Brown's lumbar (lower back) problems to his injury at work. Therefore, he ordered Respondents to provide Brown with lifetime, causally-related medical treatment for his cervical spine and diabetes. The commissioner also found exceptional circumstances existed to determine a fair and reasonable average weekly wage and compensation rate. Thus, he calculated the average weekly wage based on the salary and income a top producer for Bulldog would make per year. This amounted to $38,500 per year, resulting in an average weekly wage of $740.38 and a compensation rate of $493.84.

Brown appealed to the Appellate Panel, arguing the commissioner erred in not awarding him (1) lifetime medical care for his lower back and legs and (2) a higher average weekly wage and compensation rate. The Appellate Panel heard the matter on March 21, 2011. Thereafter, it affirmed the single commissioner's factual findings and conclusions of law. This appeal followed.

**STANDARD OF REVIEW**

The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions by the Appellate Panel. *Carolinas Recycling Grp. v. S.C. Second Injury Fund,* 398 S.C. 480, 483, 730 S.E.2d 324, 326 (Ct.App.2012). Under the scope of review established in the APA, this court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact, but may reverse or modify the Appellate Panel's decision if the appellant's substantial rights have been prejudiced because the decision is affected by an error of law or is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *See* S.C.Code Ann.

§ 1–23–380(5)(e) (Supp.2012). Our supreme court has defined substantial evidence as evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion the Appellate Panel reached. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Palmetto Alliance, Inc. v. S.C. Pub. Serv. Comm'n,* 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984). "Where there are no disputed facts, the question of whether an accident is compensable is a question of law." *Grant v. Grant Textiles,* 372 S.C. 196, 201, 641 S.E.2d 869, 872 (2007).

## LAW/ANALYSIS

### I. Lifetime Medical Care

■ Brown argues the Appellate Panel erred in denying him lifetime medical care for his lower back problems. We disagree.

■ This court must affirm the Appellate Panel's findings of fact if they are supported by substantial evidence. *Tiller v. Nat'l Health Care Ctr. of Sumter,* 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999). "Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached." *Id.* "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* This court may not substitute its judgment for that of the agency's as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative, and substantial evidence on the record. *Id.* at 339, 513 S.E.2d at 845. When determining if a claimant has established causation, the Appellate Panel has discretion to weigh and consider all the evidence, both lay and expert. *Potter v. Spartanburg Sch. Dist. 7,* 395 S.C. 17, 23, 716 S.E.2d 123, 126 (Ct.App.2011). "Thus, while medical testimony is entitled to great respect, the fact finder may disregard it if other competent evidence is presented." *Id.* The Appellate Panel has the

final determination of witness credibility and the weight to be accorded the evidence. *Id.*

In his order, the commissioner stated that *McLeod v. Piggly Wiggly Carolina Co.*, 280 S.C. 466, 313 S.E.2d 38 (Ct.App. 1984), "calls the back a much more complicated area of the body and calls for expert medical opinions in those kinds of cases." *See id.* at 471, 313 S.E.2d at 41 (noting the back is "a much more complicated area of the body," which requires "a higher degree of expertise than was presented to determine the degree of ... loss of use"). He then found Brown presented "no specific medical report that ties the lumbar [lower back] problems to the injury at work."

Brown argues the commissioner overlooked or disregarded the undisputed evidence in the record that his lower back problems were caused by and stemmed from the accident. In support of his argument, Brown submits that on July 6, 2008, two months after the accident, he went to the emergency room complaining of lower back pain. The report notes, "History obtained from patient." The admission notes state Brown indicated he was in an automobile accident two months prior to when he developed the pain, and he does a lot of heavy lifting at work, which he thinks exacerbated the pain. However, he denied any back pain when a nurse assessed him. Brown's back was x-rayed, and the hospital discharged him with a lumbosacral strain and prescribed him Percocet, a drug for pain.

On July 10, 2008, Brown saw Dr. Abu–Ata, who noted Brown told him he was in a car accident two months prior, and afterwards, he started having neck and back pain. Brown told Dr. Abu–Ata "he had x-rays for his spine that were negative." Dr. Abu–Ata "did a nerve conduction study/EMG for him that was normal and that showed no evidence of cervical or lumbosacral peri-radiculopathy." He then scheduled Brown for a magnetic resonance imaging (MRI) of his cervical spine and lower back. The lower back MRI revealed "mild to moderate degenerative disc disease at L3–4." However, the cervical spine MRI indicated Brown had "moderately severe degenerative disc/osteophyte disease of the cervical spine," and Dr. Abu–Ata gave him an emergency referral to Dr. Scott Boyd, a neurosurgeon.

On August 4, 2008, Dr. Boyd determined Brown had cervical stenosis and scheduled him for an anterior cervical discectomy and fusion on September 2, 2008. In February 2010, Dr. Boyd performed a second cervical fusion on Brown. In relation to his claim for workers' compensation, Brown sent Dr. Boyd a letter that stated:

Is it your opinion to a reasonable degree of medical certainty that the problems that [Brown] has with his neck and back and his need for medical care either stem directly from the automobile accident of May 2, 2008[,] or the accident aggravated and caused to become symptomatic a pre-existing conditions [sic] in his neck and back which resulted in the need for medical care?

Dr. Boyd checked "yes" and signed the letter. However, Dr. Boyd also signed a note excusing Brown from work, which stated: "Mr. Brown is having *back* surgery 09/02/08. He will be out of work until approximately 3 weeks after surgery." (Emphasis added.) Brown's first cervical fusion was on September 2, 2008. Therefore, Respondents contend Dr. Boyd interchangeably used the word "back" to refer to Brown's "neck." Further, Dr. Leonard Forrest did an independent medical evaluation of Brown, and although he notes Brown told him "his neck-related symptoms have always been worse than the low back related symptoms," he stated he did "not see any studies of a lumbar spine." He also stated that although Brown's back problems "certainly seem[ ] to be related to the motor vehicle accident for the same reason as noted above, [it] has not been evaluated adequately at this point."

Brown's doctors did not perform any surgeries or procedures on his lower back, and the only treatment given to Brown for his lower back was the Percocet given to him at the emergency room. Brown also testified he has not had any surgery or medical treatment to his lower back. When asked about his lower back pain, Brown stated, "[I]t starts from the back of my neck and goes down and then sometimes it varies also .... it feels different all the time. I really couldn't pinpoint [it] in particular." Hence, even Brown could not specifically testify he experienced lumbar pain. Also, although "back" pain is referred to in the record, the only medical evidence specifically relating to Brown's lower back

pain is the emergency room visit. Therefore, we find the few medical references in the record are insufficient to prove a causal link, and the substantial evidence in the record supports the Appellate Panel's decision that Brown presented no medical evidence that related his lumbar problems to the accident.

## II. Compensation Rate

■ Brown argues the Appellate Panel erred in not raising his compensation rate to $591.73. We disagree.

■ Section 42–1–40 of the South Carolina Code provides four alternative methods for the commission to use to calculate the average wage. S.C.Code Ann. § 42–1–40 (Supp.2012); *see Pilgrim v. Eaton,* 391 S.C. 38, 44, 703 S.E.2d 241, 244 (Ct.App. 2010). The primary method of calculation requires that the " '[a]verage weekly wage' must be calculated by taking the total wages paid for the last four quarters . . . divided by fifty-two or by the actual number of weeks for which wages were paid, whichever is less." S.C.Code Ann. § 42–1–40 (Supp. 2012). However, "[w]hen for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." S.C.Code Ann. § 42–1–40 (Supp.2012). " 'The objective of wage calculation is to arrive at a fair approximation of the claimant's probable future earning capacity.' " *Sellers v. Pinedale Residential Ctr.,* 350 S.C. 183, 191, 564 S.E.2d 694, 698 (Ct.App.2002) (quoting *Bennett v. Gary Smith Builders,* 271 S.C. 94, 98, 245 S.E.2d 129, 131 (1978)).

Brown alleged that at the time of the accident, his weekly wages were $589.69, which resulted in a compensation rate of $393.14. However, he sought a deviation in the calculation of his average weekly wage. He presented evidence that he worked for Boyd Brothers Trucking prior to working for Peoplease, and based on his income as reported on his W–2, he had an average weekly wage of $887.55 with a resulting compensation rate of $591.73. Brown also testified he thought Bulldog was going to pay him a rate of fifty cents per mile; however, he could not identify who at Bulldog told him that.

Monica Reese, corporate counsel for Peoplease, testified she reviews every employment contract and completes the Form 20 for every workers' compensation claim. She testified she reviewed the payroll of all sixty similarly-situated drivers and determined Brown's wages would be approximately $26,000 for the year. She testified the high end of the salary that drivers could earn is forty-two cents per mile, which is approximately $38,500 per year. She did not know of anyone who would have told Brown he would make fifty cents per mile.

Additionally, Brown submitted paystubs he alleged showed Bulldog was paying him $1.00 per mile. However, the paystubs indicate the payment on the check was calculated at a "Rate" of "$1.00" for "*Hours*" of work. (Emphasis added.) Even at the hearing before the Appellate Panel, Brown's counsel stated: "[I]n our Pre-hearing Brief we submitted copies of his check and on his check—the four or five copies of the check we submitted it said that he was making $1.00 dollar an *hour*." (Emphasis added.) The commissioner asked him if that was correct, and counsel stated: "Excuse me, $1.00 dollar a *mile*." (Emphasis added.) He then continued to say, "But in other words not only does it support my client's testimony that he was going to make $.50 cents an *hour*. . . ." (Emphasis added.) Therefore, the evidence does not support Brown's argument the record contains evidence showing Bulldog was paying him one dollar per mile.

The commissioner noted Brown presented no documentary evidence to support his testimony that Bulldog promised him fifty cents per mile, and he did not identify the exact person that told him that at the time of employment. Nevertheless, the commissioner found exceptional circumstances existed to determine a fair and reasonable average weekly wage and compensation rate. As a result, the commissioner determined the fair average weekly wage was $740.38 with a resulting compensation rate of $493.84. Therefore, the commissioner assumed Brown would eventually earn the highest amount a driver in his situation could earn and took into account possible future earnings and wage increases in calculating his average weekly wage. We find no error.

### III. Order

Brown argues the Appellate Panel erred in not writing its own order. We disagree.

On April 1, 2011, Judicial Director Virginia Crocker emailed a letter to all counsel, stating the Appellate Panel "has considered the matter and find[s] a full affirmation of the Single Commissioner's Decision and Order." The letter requested counsel for Respondents "prepare a proposed order with copies for each Party; and submit to the Judicial Department within thirty (30) days of this notice." It also requested the order "recite[ ] the specific Findings of Fact and Rulings of Law of the Single Commissioner's Decision and Order." Further, the letter stated "the Commissioners reserved the right to modify and/or delete any or all portions of the submitted decision and order."

We find no merit to Brown's argument. *See Trotter v. Trane Coil Facility*, 393 S.C. 637, 644, 714 S.E.2d 289, 292 (2011) (noting the "Appellate Panel of the Commission unanimously upheld the commissioner's order and adopted the findings of fact and conclusions of law contained therein in full"); *Matute v. Palmetto Health Baptist*, 391 S.C. 291, 295, 705 S.E.2d 472, 474 (Ct.App.2011) (discussing without comment the single commissioner's receipt of the claimant's proposed order).

## IV. Motion for Remand

Brown argues this court erred in denying his motion for leave to present additional evidence to the Workers' Compensation Commission pursuant to section 1–23–380(3) of the South Carolina Code (Supp.2012). We disagree.

Section 1–23–380 of Administrative Procedures Act provides that a "party who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review" of the agency decision by filing a petition for review in the court of appeals. S.C.Code Ann. § 1–23–380 (Supp.2012).[1] Section 1–23–380(3) provides that pursuant to the filing of a petition for review, the party may also apply to the court for leave to present additional evidence, and the court may order the

---

1. This section was amended in 2006 to provide for review by an administrative law judge and appeal to the court of appeals instead of the circuit court. 2006 Act No. 387, § 2, eff. July 1, 2006. Because this case began in 2010, Brown's appeal was to this court.

additional evidence to be taken before the agency if "it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency." S.C.Code Ann. § 1–23–380(3) (Supp.2012).

Brown filed his notice of appeal with this court on July 28, 2011. The same day, Brown also filed with this court a motion for leave to present additional evidence to the Workers' Compensation Commission and to stay the appeal pending the remand to the Commission. In his memorandum in support of his motion, Brown sought to introduce a photocopy of a card he found while going through his records, which he claimed someone gave him when he applied with Bulldog. The back of the card states: "Run Legal: 50¢ per loaded mile." Brown asserted the additional evidence was material because, in making his decision, the commissioner relied on the lack of documentary evidence to support Brown's testimony. By order dated November 2, 2011, this court denied Brown's motion, finding Brown "presented no good reasons for his failure to present the evidence during the hearing before the single commissioner and the Appellate Panel."

In ruling on an application to submit additional evidence, this court should consider two factors: (1) the materiality of the additional evidence; and (2) the existence of a good reason for the failure to introduce such evidence at the original hearing. S.C.Code Ann. § 1–23–380(3) (Supp.2012). After reviewing the record, we find this court correctly determined the additional evidence Brown sought to offer is not material. Additionally, we find this court correctly determined Brown presented no good reason for failing to present the evidence at the hearing before the commissioner and the Appellate Panel. Therefore, this court correctly denied Brown's motion. *See Byers v. S.C. Alcoholic Beverage Control Comm'n*, 305 S.C. 243, 245, 407 S.E.2d 653, 654–55 (1991) (finding the decision to hear additional evidence under section 1–23–380(e), prior to the statute's amendment, was "a matter within the sound decision of the trial judge" and the appellate court's proper standard for review was "whether the circuit judge committed an error of law in remanding the case to the Commission to hear additional evidence"); *id.* (stating that "[i]n ruling on an application under subsection (e), the [c]ircuit [c]ourt should

have considered two factors: the materiality of the additional evidence and the existence of a good reason for the failure to introduce such evidence at the original hearing"); *id.* (finding any additional evidence the petitioner sought to offer was not material to the Commission's determination and holding the trial judge was controlled by an error of law in making his determination on the materiality of the additional evidence).

**AFFIRMED.**

KONDUROS and LOCKEMY, JJ., concur.